## THE CLINTON BRIDGE.

1. An act of Congress enacting that a certain bridge, already built over a river which divides two States, "shall be a lawful structure, and shall be recognized and known as a post-route," means not only that the bridge shall be a post-route, but also that, as built, with its abutments, piers, superstructure, draw, and height, it should have the sanction of law, and be maintained and used in that condition. This, although the act was declared by its title to be simply an act declaring the bridge "a post-route."
2. A suit in chancery begun previously to the passage of the act, praying injunction against building of the bridge as a nuisance, is abated by such an act; though pleas and replication had been filed, proofs taken, and the case ready for hearing.
3. The act is constitutional.

---

[*] 4 Howard, 327.

APPEAL from the Circuit Court for the District of Iowa.

Gray filed a bill in equity in the court below against the Chicago, Iowa, and Nebraska Railroad Company, to enjoin them from building a railroad bridge across the Mississippi River, at the town of Clinton, situate on its banks on the Iowa or western side, and extending to a point opposite on the eastern or Illinois side. Railroads in each State came to the *termini* of the bridge. After setting out the interest which the complainant had in the free and unobstructed navigation of the river, and the serious danger and obstruction to the navigation by the erection of the bridge, the bill concluded with a prayer for a temporary injunction against the defendants, enjoining them from building the bridge until the final hearing of the cause, and for a perpetual injunction on the final hearing. Answers and replications were put in, and a large amount of proofs were taken by both parties. When the cause came on for a final hearing the counsel for the defendants objected to the proofs of the complainant being read, on the ground that, since the erection of the bridge, Congress had passed an act declaring it a lawful structure.

The act of Congress thus relied on as concluding the case, and which was passed 27th February, 1865, was entitled " An Act declaring Clinton Bridge across the Mississippi River, at Clinton, in the State of Iowa, a *post-route.*" It ran thus :

"SEC. 1. The bridge across the Mississippi River, erected by the Albany Bridge Company and Chicago, Iowa, and Nebraska Railroad Company, under the authority of the States of Iowa and Illinois, between the towns of Clinton, Iowa, and Albany, Illinois, *shall be a lawful structure, and shall be recognized and known as a post-route, upon which also no higher charge shall be made for the transmission over the same of the mails, the troops, and the munitions of war of the United States than the rate per mile paid for their transportation over the railroads or public highways leading to said bridge.*

"SEC. 2. The draw of said bridge shall be opened promptly upon reasonable signal for the passage of boats, whose construc-

tion shall not be such as to admit of their passage under the permanent spans of said bridge, except when trains are passing over the same; but in no case shall unnecessary delay occur in opening said draw during or after the passage of trains.

"SEC. 3. In case of any litigation hereafter arising from any alleged obstruction to the free navigation of said river, the cause may be tried before the Circuit Court of the United States of any State in which any portion of said obstruction or bridge touches.

"SEC. 4. The right to alter or amend this act, so as to prevent or remove all material obstructions to the navigation of said river, by the construction of said bridge, is hereby expressly reserved."

The bridge had been completed before the passage of the act.

The court below sustained the objection made to the reading of the plaintiff's proofs; holding that the act was conclusive of the case, and refused to hear any evidence going to prove that the bridge was a material obstruction to the navigation of the Mississippi, or to sustain any of the facts set out in the bill, and dismissed it accordingly. Thereupon the complainant brought the case here.

*Mr. T. D. Lincoln, for the appellant:*

The act did not intend to abate the suit. It is not usual for the legislature to pass statutes that shall dispose of particular cases pending. No act should be construed as doing this, unless no other fair construction can be given. And as here the third section of the very act provides for litigation thereafter to arise in reference to the bridge as an obstruction, the act can hardly be construed as preventing a right to litigate.

The statute did not intend to do more than to declare generally, that a bridge at the point named in it was a lawful structure for the purposes therein stated; the purposes, namely, of a post-route.

The object of the law, as declared by its title, was simply to provide that the bridge should be a post-route. Certainly,

if anything more was intended it was not expressed in the title, of which the object in all statutes is to tell what the purpose and intent of the statute is.

Numerous acts have been passed from time to time establishing post-routes upon common and plank roads, upon waters (river, lake, canal, and ocean); and, what is more pertinent, of late upon railways; all this being done sometimes by acts embracing general classes of routes;* sometimes by acts giving a description of the route by name.

One act respecting railroads was that of July 7th, 1838,† by which it was declared "that every railroad within the limits of the United States, which now is or hereafter may be completed, shall be *a post-route*, and the Postmaster-General shall cause the mail to be transported thereon," &c.

Examination of these numerous statutes will show that their object was simply to make it lawful for the Postmaster-General to establish post-offices and to contract for carrying the mail, and that they had no other purpose whatsoever. Now the words here are not inapt words to express the idea of these laws. They do not necessarily mean more, especially when it is observed that the words "lawful structure" are directly connected with the words " and shall be recognized and known as a post-route;" and with these words, " upon which also no higher charge shall be made for transmission over the same of the mails," &c., " than over the railroads and public highways leading to said bridge." It must be remembered, too, that the roads leading to the bridge had been made post-roads by other acts.

Suppose Congress had passed a law entitled. "An act to establish post-roads," and had in the first section thereof declared that all roads, turnpikes, plank-roads, railroads, and canals, and all the rivers of the United States, over which any interstate commerce is carried, shall be lawful structures, and be known and designated as post-roads, and

---

* See act of May 8, 1794, 1 Stat. at Large, 357; of May 1, 1810, 2 Id. 549; of 27 February, 1815, 3 Id. 226; of March 3, 1847, 9 Id. 200, 645; of March 3, 1853, 10 Id. 255.

† § 2, 5 Id. 283.

that no greater toll should be paid than had heretofore been paid on the railroad from Washington to Baltimore,—such an act would not differ from the one in question. And would any one say that such an act was intended to legalize all the roads in the country (except to make them legal post-roads), and that the courts could not entertain a suit by an individual to abate some portion of one of these roads as a nuisance specially injurious to him; and that no judicial inquiry could be made as to the manner in which any of these roads had been constructed, or the bridges over the rivers made?

The sort of language which Congress employs when it wishes to make a bridge a lawful structure generally can be seen in the act respecting the Wheeling bridge. In that case this court had declared the bridge an obstruction to navigation upon the ground that the span over the main channel between Zane Island and Wheeling was too low to let the chimneys of steamers under, and it was ordered to be abated unless this span was raised to the given height.*

Thereupon Congress, by an act whose title was for a fiscal purpose, specified and "*for other purposes*," enacted in its sixth section that the said bridges

"Are hereby declared to be lawful structures *in their present position and elevation*, and shall be so held and taken to be, anything in any law or laws of the United States to the contrary notwithstanding."

The seventh section provided that the said bridges should be post-routes for the passage of the mails, and then proceeded:

"And that the Wheeling and Belmont Bridge Company are authorized to have and maintain their said bridges at their present site and elevation; and the officers and crews of all boats navigating the said river are required to regulate the use of said vessels and boats, and of any pipes and chimneys

---

* Pennsylvania v. The Wheeling, &c., Bridge Co., 13 Howard, 569, 573; S. C., 18 Ib. 421.

belonging thereto, so as not to interfere with the elevation and construction of said bridges."

Such language leaves no room for doubt that the act was intended to reach the very question decided by the court.

It is not intimated in our statute that the bridge was to be maintained *as it then was, or in its then condition,* or that navigators must conform their boats to it. The fourth section is a plain intimation to the contrary. It leaves open the right to amend the act so as to prevent and remove all material obstruction to the navigation of the river, by the construction of the bridge.

Now what are the consequences of the construction set up? One is, that no suit by any such person for loss or damage occasioned to his property by the bridge can be maintained. Private rights are in effect taken away without compensation. This is a consequence in violation of common and public law; a consequence which, if it may follow precise and unequivocal terms, such as were used in regard to the Wheeling bridge, can never follow doubtful ones. No court would construe any statute to have these effects where it could well avoid it.

In its more immediate consequence the construction set up makes the act the exercise of at least a *quasi* judicial function. It works an abatement of a pending suit, so as to put an end to any further prosecution of it, and so as to put an end to any further inquiry as to the obstruction caused by the bridge. Whether this is not the exercise of a complete actual judicial function, and whether, if it be, it is not unconstitutional, is a point which we consider hereafter. But if it be less, and can be sustained, such legislation goes to the verge of the Constitution. It is unusual, doubtful, inexpedient, and not to be presumed to have passed, except a purpose to pass it be clearly indicated.

Possibly enough some artful person, interested in maintaining the existence of the bridge, may have dictated the language of the act, and did intend slyly to produce the exact effect which is now sought to be maintained; but if

the words "lawful structure," relied on, have come into the law by the covert design of the draftsman, it needs no case to show of what value such an enactment is. The question is, what did *Congress* mean ? Now, in the construction of laws, there are certain leading rules of interpretation. Among them are these:

1st. The title to the act may be resorted to in case of any doubt as to the true meaning of the law.

2d. The act shall be construed with reference to the laws upon the same subject, and to the declared purpose of the act.

3d. The whole statute must be construed together, and one part of it cannot be so construed as to be inconsistent with another part of it.

4th. The consequences of any given construction are to be considered where there is fair room for doubt.

5th. No act should be so construed as to take away private rights without compensation, if any other fair construction can be given it.

6th. No act should be so construed as to leave it of doubtful *constitutionality* where such construction can be fairly avoided.

Opposing counsel construe this statute so as to violate each one of these rules.

II. If our view in which the act is to be construed is wrong, and the construction set up on the other side is a right one, we deny that Congress had, constitutionally, power to pass such an act. Construed thus, it has found as a fact that the bridge, as it stands, is a lawful structure, in such sense as to prevent the plaintiff from prosecuting a suit which he had then pending against this railroad company. The law is not one affecting the jurisdiction of the court, or, as in the case *Ex parte McArdle** (a case which went to the verge of law), taking it away in a certain class of cases then pending. If it so finds the bridge a lawful structure as to put an end to this suit, it is the exercise of a judicial function, and in no sense a legislative act. A law is " a rule of

---

* 7 Wallace, 506.

action prescribed by the supreme power in a state."* Now, if this law is to be construed as finding that the bridge is, in fact, a lawful structure in such sense as to require the court below to dismiss the suit, what is it but the finding precisely what the court itself was asked by one of the parties to find in the case; in other words, the determining a legal question between the parties to a suit then pending in the court? Suppose the court had, in the sense here contended for, decreed that the bridge was a lawful structure, would not that necessarily have ended the suit? Can Congress step in and make such decree by the words, "shall be a lawful structure?" That is the exercise of a judicial function, which is placed by the Constitution in the courts of the United States. Such a decree Congress did make in effect;† and the court below, in obedience to that view of the act, ordered the bill dismissed upon the force of the statute, refusing to inquire into the merits.

The law cannot be sustained as a law regulating commerce among the States. It is not, in any fair sense, a regulation of commerce. It does not prescribe any rule by which commerce shall be carried on. It does not provide that it shall or shall not be carried on over this bridge at all, or the conditions upon which it shall be so carried on. The only condition in the law relates to the price to be charged for carrying the mails.

Nor is the bridge, in any fair sense, an instrument of commerce. It is not like the vehicle or vessel in which commerce shall be or is carried on. Nor is it any provision as to the mode or manner in which the vessel shall be built, or manned or navigated; nor as to the kind of goods to be passed over the bridge, or any regulation for bringing this commerce under the revenue system of the government.

---

* Blackstone's Commentaries, Introduction, § 2.

† De Chastellux v. Fairchild, 15 Pennsylvania State, 18; The State v. Fleming, 7 Humphrey, 152; Lewis v. Webb, 3 Greenleaf R. 326; Lanier v. Gallatas, 13 Louisiana Annual, 176; Holden v. James, 11 Massachusetts, 396; Merrill v. Sherburne, 1 New Hampshire, 203; Parmelee v. Thompson, 7 Hill, 80; Sanborn v. Commissioners of Rice County, 9 Minnesota, 279.

*The court declined to hear argument from Messrs. J. H. Howe and E. Totlin, on the other side.*

Mr. Justice NELSON delivered the opinion of the court.

The first section of the act of Congress provides, "that the bridge across the Mississippi River, erected by the Albany Bridge Company and the Chicago, Iowa, and Nebraska Railroad Company, under the authority of the States of Iowa and Illinois, &c:, shall be a lawful structure, and shall be recognized and known as a post route."

We cannot doubt, upon a perusal of the section, but that it was the intention of Congress to legalize the bridge as then constructed across the river, and that the words used carry out fully this intent. It is declared "a lawful structure;" that is, the bridge as built, with its abutments, piers, superstructures, draw, and height, should have the sanction of law, and be maintained and used in that state and condition until the law was altered by the reserved power in the last section.

The act of Congress in the case of the Wheeling Bridge, whose language it is sought to distinguish from that used in the present one, was more explicit, but not more comprehensive. In the Wheeling Bridge case the court had rendered a decree, directing the obstruction to be removed by elevating the bridge, or if not, by abatement. No doubt the existence of this decree, which was in the process of execution, led to the very specific terms of the act. But with all its particularity it is not more comprehensive or decisive in legalizing the bridges than the one before us.

The questions, whether or not it was competent for Congress to interfere and legalize the bridge under the power to regulate commerce, and whether or not the act put an end to the pending suit, were questions examined and settled in the affirmative in the case already referred to.* The reasons for the conclusions arrived at will be there found, and need not be repeated.

The only difference between the case of the Wheeling

---

* 18 Howard, 429.

Bridge and the present one is, that in the former a decree had been rendered by the court against the bridge, in the latter the cause was pending undecided.   It was, in the former case, insisted on behalf of the complainant, that the act of Congress could not invalidate the decree of the court. But it was answered that the decree of abatement of the obstruction was executory, a continuing decree, which required not only the removal of the bridge, but enjoined the defendants against any reconstruction.   And that whether or not it would be a future existing obstruction depended upon the question whether it interfered with the right of free navigation, and that if, in the meantime, this right had been modified by competent authority, so that the bridge was no longer an unlawful obstruction, the decree of the court could not be enforced.   There was no longer any interference with the enjoyment of the public right inconsistent with law no more than there would be if the complainant himself had given his consent after the decree.

In the present case the act of Congress having passed pending the suit, it gave the rule of decision for the court at the final hearing upon the same principle that the act in the Wheeling Bridge case staid the execution of the decree directing its abatement.   The court say in that case that if the remedy had been an action at law, and a judgment rendered in favor of the plaintiff for damages, the right to these would have passed beyond the power of Congress.   And if, in the present case, the action had been at common law for damages alleged to have been done to the property of the plaintiff before the passage of the act of Congress, very different considerations would have arisen as to the effect of the act upon this private right of action from that upon a simple proceeding to enjoin the building of the bridge; or, if built, to abate it as a nuisance.

We think that the ruling of the court below was right, and that the judgment should be

AFFIRMED.