MILLER *v.* THE MAYOR, ETC., OF THE CITY OF NEW YORK and others.

*(Circuit Court, S. D. New York.* June 9, 1880.)

1. NUISANCE—BRIDGE OVER NAVIGABLE RIVER.

A bridge constructed over a navigable river under the authority of congress and of the legislature of the state in which it is situated, in the manner authorized by law, is a legal structure, and cannot be held to be a public nuisance, or otherwise unlawful.

2. REGULATION OF COMMERCE—POWER OF CONGRESS.

In the exercise of its power to regulate commerce, congress may authorize the construction of a bridge over a navigable river of the United States, and it may itself approve the design or plan of its construction, or devolve that duty upon the secretary of war.

3. NOTIFICATION OF APPROVAL OF PLAN.

It is competent for the secretary of war to convey notification of his approval of the design and plan of the bridge in any way which would be effectual, and notice given through a subordinate is sufficient.

In Equity.

*Wm. H. Arnoux,* for plaintiff.

*Joseph H. Choate,* for defendants.

BLATCHFORD, C. J. The plaintiff brings this bill in equity "on behalf of himself and all others similarly situated with him." The defendants are the cities of New York and Brooklyn, as municipal corporations, and the persons composing the board of trustees of the suspension bridge over the East river between the cities of New York and Brooklyn. The plaintiff does business in the city of New York, as the lessee of certain United States bonded warehouses situated in the city of New York, on the East river, at the corner of Jefferson and South streets, and also as the lessee of certain other warehouses situated in said city on the East river, on South street, between Peck and Rutger's slips. He alleges, in the bill, that the bridge will be built without lawful authority; that it will be a nuisance, and will obstruct, impair, and injuriously modify the navigation of the East river, and may seriously and prejudicially affect the commerce of the port of New York; and that the expense to vessels of striking parts of their masts, in passing under the bridge, with the detention and additional towage, would be so great as to destroy the warehouse business of the plaintiff in such locations, and be a private and irreparable injury to him, for which an action at law would afford no adequate redress to him. The bill prays for a decree that the bridge is being built without lawful authority; that it will be a nuisance in

law and in fact; that it will obstruct, impair, and injuriously modify the navigation of the East river; and that the defendants be enjoined from building it at the height of 135 feet above mean high water, or at any other height that shall obstruct, impair, or injuriously modify the navigation of said river. The bill alleges that the bridge is being so built that it will, at the center, have a height of 135 feet only above mean spring high-water mark, with an allowance of two feet rise and fall by reason of the expansion and contraction of the suspended cables; and that, in a large proportion of the vessels which will pass and repass the location of the bridge, the masts exceed 135 feet in height.

, This case comes up now, for final hearing, on pleadings and proofs. It was before this court, on a motion for a preliminary injunction, in August, 1867, (13 Blatchf. 469,) and the motion was denied. The decision of Judge Johnson covers nearly all the points now presented, and the controlling facts are not materially varied from those on which his decision was based. Much testimony has been taken, addressed to the question whether the bridge will in fact obstruct or impair navigation, and to what extent and in what manner. But, in the view on which the case must be decided, such testimony is unimportant.

Passing by the objection taken by the defendants, that the plaintiff has no standing in court to obtain the relief asked for, because it does not appear that he has sustained, or is about to sustain, any special damage different from that sustained by the rest of the public, and therefore cannot maintain a private action for a public nuisance, and because he is only a lessee of warehouses from year to year, it is clear that as the defendants have the authority of congress, and of the legislature of the state of New York, for the construction of the bridge in the manner in which it is constructed, it is a legal structure, and cannot be held to be a public nuisance. This is fully considered in the decision referred to. In addition to the authority to build the bridge conferred by the act of the legislature of New York passed April 16, 1867, (Laws of New York, 1867, c. 399, p. 948,) supplemented by subsequent acts of the same legislature to the same effect, congress, by an act approved March 3, 1869, (15 St. at Large, 336,) declared such bridge, when completed in accordance with said state act of 1867, to be "a lawful structure and post road for the conveyance of the mails of the United States." The state act of 1867 contains the following provision:

"Nothing in this act contained shall be construed to authorize, nor shall it authorize, the construction of any bridge which shall obstruct the free and common navigation of the East river."

The act of congress contains this provision:

"Provided that the said bridge shall be so constructed and built as not to obstruct, impair, or injuriously modify the navigation of the river; and, in order to secure a compliance with these conditions, the company, previous to commencing the construction of the bridge, shall submit to the secretary of war a plan of the bridge, with a detailed map of the river at the proposed site of the bridge, and for the distance of a mile above and below the site, exhibiting the depths and currents at all points of the same, together with all other information touching said bridge and river as may be deemed requisite by the secretary of war to determine whether the said bridge, when built, will conform to the prescribed conditions of the act not to obstruct, impair, or injuriously modify the navigation of the river."

It also further enacted—

"That the secretary of war is hereby authorized and directed, upon receiving said plan and map, and other information, and upon being satisfied that a bridge built on such plan, and at said locality, will conform to the prescribed conditions of this act, not to obstruct, impair, or injuriously modify the navigation of said river, to notify the said company that he approves the same, and upon receiving such notification the said company may proceed to the erection of said bridge, conforming strictly to the approved plan and location. But until the secretary of war approve the plan and location of said bridge, and notify said company of the same in writing, the bridge shall not be built or commenced; and should any change be made in the plan of the bridge, during the progress of the work thereon, such change shall be subject likewise to the approval of the secretary of war."

The third section of the act provided that congress should "have power at any time to alter, amend, or repeal this act." The views taken in the decision of Judge Johnson, and in which I concur, were that if the steps pointed out in the act of congress have been taken, there is the direct authority of congress for proceeding in the construction of the bridge in conformity with the approved plans, and a conclusive determination that the navigation of the river will not thereby be obstructed, impaired, or injuriously modified, unless congress does not possess the power thus to legislate, and that congress does possess that power. The cases of *State* v. *Wheeling Bridge Co.* 18 How. 421, and *The Clinton Bridge*, 10 Wall. 454, are conclusive as to the existence of such power in congress. The Wheeling bridge in fact impeded steam-boat navigation, yet congress declared it to be a lawful structure, and the supreme court held that such act was a legitimate

exercise of the power of congress to regulate commerce. *South Carolina* v. *Georgia*, 93 U. S. 4, 12.

Judge Johnson held that the authority of the act of congress had been pursued. He overruled the objection that the notice to the company was not under the hand of the secretary of war himself, and held that, as the secretary had approved in writing, under his own hand, of the plan of the bridge, it was sufficient for him to direct notice of such approval to be given to the company. I concur in these conclusions.

The bridge has been constructed in accordance with the plans and terms approved by the secretary of war. By the act of the legislature of New York passed May 14, 1875, (Laws of New York, 1875, p. 290,) the bridge in its entirety, as then contemplated, was declared to be a public work, and the state of New York gave its sanction to it.

In the case of *People* v. *Kelly*, 76 N. Y. 475, the court of appeals of New York held that congress could authorize the construction of this bridge, although it would, to some extent, interfere with navigation; that the determination of congress as to the extent of the interference which would be permitted was conclusive; that congress might devolve upon the secretary of war the power to approve or prescribe the plan for the bridge; that the provisions of the act of congress in this case were within the powers of congress; that the secretary of war could convey the notification in any way which would be effectual; and that the notice given in this case, through one of his subordinates, was sufficient. A point was taken in that case, as it is now taken in this, that congress could not devolve on the secretary of war the power which it did. On that subject the court of appeals said:

"Congress, in the exercise of its power to regulate commerce and navigation, could itself approve the plan of the bridge, or it could prescribe a mode in which it could be done. Hence, it was competent for it to devolve upon the secretary of war the power to approve or prescribe the plan for the construction of the bridge. By so doing it did not abdicate its power, but provided an agency, as it does in most other cases, for the complete and practical exercise of its power; and it still retained control of the whole subject, by the power expressly reserved, at any time to alter, amend, or repeal the act."

These views are sound and controlling. In the same case the court of appeals said:

"After the passage of the act of 1875 it was no longer necessary so to construct the bridge as in no degree to obstruct the free and common navigation of the river, as required by the act of 1867. At the time of the passage of the

act of 1875, a plan of the bridge, approved under a public act of congress, had for some years been adopted and acted upon. That plan showed precisely to what extent the bridge would obstruct navigation upon the river, and more than five millions of dollars had been expended upon the bridge. The plan and character of the bridge must be assumed to have been known to the legislature, and the act of 1875 is an act providing for the completion of the bridge then in course of construction, and the trustees to be appointed under that act are required to complete that bridge. There was then a legislative approval and sanction of the bridge as then being constructed according to the plan prescribed by the act of congress, and thereafter the trustees were required only to conform to the plan thus adopted and approved in the construction of the bridge. So long as there is no departure from such plan the structure could not be assailed as an obstruction to navigation. What is thus sanctioned by both the state and national legislatures cannot be a nuisance or otherwise unlawful."

As to the guys or stays which were attached to the main span of the bridge, and hung below the bottom chords, they were used only in construction, and were not to be permanent; and it is not at all clear that they were a violation of the conditions prescribed by the secretary of war. Moreover, they have been removed.

The bill must be dismissed, with costs.

NOTE. The power of congress to authorize a bridge across a public river navigable from the sea is paramount. *Silliman* v. *Hudson Riv. Br. Co.* 4 Blatchf. 83, 409; *North River Steam-boat Co.* v. *Livingston,* 3 Cow. 713; *People* v. *Rensselaer, etc., R. Co.* 15 Wend. 113. See *Clinton Bridge Case,* Woolw. 150.—[ED.