**PACIFIC INTER-CLUB YACHT ASSO-CIATION, a corporation, Plaintiff,**

v.

**H. A. MORRIS, District Engineer, T. H. Richards, Jr., Carl F. Wente, William P. Elser, Henry Clineschmidt, and James H. Smith, members of the Fish and Game Commission of the State of California; Colon O. Kilby, William Goheen, A. L. Lopes, D. A. Mowers and Raymond E. Church, members of the Board of Supervisors of the County of Solano; Does One to Twenty, Defendants.**

Civ. No. 7989.

United States District Court
N. D. California, N. D.
April 11, 1960.

J. Warren Manuel, Oakland, Cal., for plaintiff.

Lynn J. Gillard, U. S. Atty., Keith R. Ferguson, Sp. Asst. to Atty. Gen., of United States, San Francisco, Cal., for defendant H. A. Morris, District Engineer.

James M. Shumway, County Counsel, John G. Soanes, Asst. County Counsel, John P. Csomay, Deputy County Counsel, Fairfield, Cal., for defendants Colon O. Kilby, A. L. Lopes, William Goheen, D. A. Mowers and Raymond E. Church, Members of the Board of Supervisors of the County of Solano.

Stanley Mosk, Atty. Gen., Ralph W. Scott, Deputy Atty. Gen., for defendants T. H. Richards, Jr., Carl F. Wente, William P. Elser, Henry Clineschmidt and James H. Smth, members of the Fish and Game Commission of the State of California.

HALBERT, District Judge.

This action was brought under the purported authority of Title 33 U.S.C.A. § 525 to prevent the building of a bridge across Montezuma Slough (a navigable waterway) in such a manner as to obstruct navigation unreasonably.

The defendants, Department of Fish and Game of the State of California, and Board of Supervisors of the County of Solano, applied to the Chief of Engineers and the Secretary of the Army for permission to build such a bridge, submitting a plan for the proposed bridge. The plan called for a low-level bridge with a removable span. A hearing was held by the District Engineer in charge of the area in which the bridge is to be built, and his approval was given to the proposal. The Chief of Engineers and the Secretary of the Army then granted their permission, on condition that the District Engineer be permitted to supervise construction in order to make certain that the plans would be complied with, and that the work would proceed in such a

manner as not to impair navigation unreasonably. Defendant Morris is the incumbent District Engineer in the area where the bridge is to be located.

Plaintiff seeks by injunction to restrain the defendants from building a low-level bridge, which it is contended will unreasonably interfere with navigation. Defendants have raised the issue of the jurisdiction of this Court by answer, and have moved for summary judgment on the ground that this Court has in fact, and in law, no jurisdiction insofar as this case is concerned.

■■■ This Court is a court of limited jurisdiction, and has no authority beyond that specifically granted to it by statute. There is no presumption of jurisdiction in the Federal Courts (Lehigh Mining & Manufacturing Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444). It is the duty of the litigants in every case brought in this Court to make clear the basis of the Court's jurisdiction over the proceeding. It is also the duty of the Court to make certain that jurisdiction exists. If jurisdiction does not exist, the proceeding must be dismissed (Warner v. Territory of Hawaii, 9 Cir., 206 F. 2d 851).

The only statutes under which this Court could possibly have jurisdiction of this case are Title 28 U.S.C. § 1331 and § 1337.

At the outset it must be noted that there is no allegation in the complaint that the amount in controversy exceeds $10,000.00. There is an allegation that the amount in controversy exceeds $3,-000.00, but this is not sufficient to confer jurisdiction on this Court. The complaint in this case was filed on October 21, 1959, so the required jurisdictional amount is fixed by Title 28 U.S.C. § 1331, as amended July 25, 1958.

■■■ If the action properly arises under a statute regulating commerce, or protecting commerce against restraints, then, of course, the amount in controversy is, as a matter of law, irrelevant.

In such an action, the Court would have jurisdiction under Title 28, U.S.C. § 1337 (See: Weiss v. Los Angeles Broadcasting Co., 9 Cir., 163 F.2d 313), Title 33 U.S. C.A. § 525 being a statute protecting commerce against restraints (See United States v. Wishkah Boom Co., 9 Cir., 136 F. 42).

■■■ The right of the several States and their political subdivisions to build roads and bridges in conjunction therewith is subject to the paramount power of the United States over commerce, and over the navigable waters of the United States (Union Bridge Co. v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523; Monongahela Bridge Co. v. United States, 216 U.S. 177, 30 S.Ct. 356, 54 L.Ed. 435; and Gilman v. City of Philadelphia, 3 Wall. 713, 70 U.S. 713, 18 L.Ed. 96). A State may authorize and construct a bridge partially obstructing a waterway, or even a causeway completely blocking a waterway, unless Congress has prohibited such action (Gilman v. City of Philadelphia, supra; Willson et al. v. Black Bird Creek Marsh Company, 2 Pet. 245, 27 U.S. 245, 7 L.Ed. 412).

Congress has granted its consent to the construction of bridges over the navigable waters of the United States, where the Chief of Engineers, and the Secretary of the Army, approve the location and plans for such bridges. These officials, in approving the plans, are authorized to impose any conditions relating to the maintenance and operation of the structure, which they may deem necessary in the interest of public navigation. The conditions thus imposed have the force of law (Title 33 U.S.C.A. § 525).

■■ Although plaintiff's complaint states that this action arises under Title 33 U.S.C.A. § 525, plaintiff has taken the anomalous position of arguing that the statute is in fact unconstitutional because it improperly delegates powers to the Chief of Engineers and the Secretary of the Army.[1] Plaintiff contends, in this connection, that no adequate standard is

---

1. If this were true, plaintiff would be deprived of the statute, which it asserts is the authority for jurisdiction in this action.

set forth to which those officials must adhere. Plaintiff draws the conclusion that, since the statute is unconstitutional, the Court may enjoin defendant Morris from proceeding under the permit issued under its authority. To quote from plaintiff's brief, in opposition to the motion for summary judgment: "Plaintiff contends that the defendant H. A. Morris has and will act in excess of his authority, and in an arbitrary manner in *permitting* the construction of the Montezuma Slough Bridge." (Emphasis added).

The constitutionality of the statute in question is obvious, and plaintiff's attack on the statute raises no substantial federal question (Jones v. State Road Dept. of State of Florida, 5 Cir., 260 F.2d 421). Section 525 was not enacted in a vacuum, but as part of a considerable volume of legislation on the subject of bridges over navigable waters. In this connection, the following declaration of legislative intent is set forth: "No bridge shall at any time unreasonably obstruct the free navigation of any navigable waters of the United States." (Title 33 U.S.C.A. § 512). Section 525 itself requires the Chief of Engineers, and the Secretary of the Army, to examine proposed plans and locations, and approve or reject them, and in this regard they are authorized to impose any specific conditions which they may deem *necessary in the interest of public navigation*. The standards to which the officials must adhere are abundantly clear. The delegation of authority to decide whether a bridge might be placed or remain across navigable waters, with no more explicit "standards," has been determined to be constitutional by the United States Supreme Court (Miller v. Mayor, etc., of City of New York, 109 U.S. 385, 3 S.Ct. 228, 27 L.Ed. 971; Union Bridge Co. v. United States, supra; Monongahela Bridge Co. v. United States, supra). Such being the case, this question is not open for consideration by this Court (See Jones v. State Road Dept. of State of Florida, supra).

Plaintiff makes many complaints about the hearing held by the Chief of Engineers and the Secretary of the Army prior to the approval of the plans and location of the bridge. If it is the desire of the plaintiff to set aside the decision of these officials, they would have to be brought before a proper Court, in a proper proceeding, for they would, under such circumstances, certainly be indispensable parties (Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534). Moreover, none of plaintiff's allegations as to the manner in which the hearing was conducted show that any arbitrary action was taken or that any prejudicial error occurred. The least insubstantial point raised by plaintiff is that the findings as to the frequency of use of the waterway were incorrect. In this regard, it is alleged that these findings were based on the number of times that a drawbridge had to be opened, which drawbridge was admittedly left open when not in use. Plaintiff asserts that there are figures which purport to show that the agency findings underestimate the traffic which passed while the bridge was open. Neither plaintiff nor plaintiff's predecessor made such data available at the time of the hearing, (Plaintiff's predecessor was represented at the hearing), and thus the agency had no course but to rely on an estimate based on the available evidence. There is nothing arbitrary about that type of practice. It is, in fact, a duty with which all fact-finding bodies are confronted not infrequently.

Plaintiff has alleged that defendant Morris has threatened to depart from the plans approved by the Chief of Engineers and the Secretary of the Army, by allowing the construction of a wider bridge than the one which was called for by the original plans; by building a bridge without a removable span; and by making other departures which plaintiff apparently does not consider worthy of being enumerated.[2]

---

2. It is not alleged that any of the proposed deviations would *per se* cause any damage to plaintiff or to those on whose behalf plaintiff is bringing this action.

■ In summary, what plaintiff is asserting is that a Federal official in the Executive Branch of the Government is threatening to disobey the orders of his superior officer; that such action will irreparably harm plaintiff's private rights; and that this Court should therefore grant an injunction directing the official to do his duty. If the relief sought is granted, this Court will be undertaking the supervision of an executive employee in the performance of his duties. Such supervision is not only the right, but the duty of the employee's superiors. Certainly it is neither a right nor a duty of this Court.

The fundamental necessity of maintaining each of the three separate branches of the Government free from the control or coercive influence of the others is no longer open to debate. The Federal Constitution prescribes the separation of the powers of the three branches of the Government. The principle which makes one branch the master in its own house precludes it from imposing its control in the house of another (Humphrey's Executor v. United States, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611). It is the prerogative and the duty of the officials in charge of defendant Morris to supervise him in the execution of the orders of his superiors. This Court has no jurisdiction whatsoever to interfere in this administrative function (Hills v. Eisenhart, D.C., 156 F.Supp. 902, affirmed 9 Cir., 256 F.2d 609).

■ What has already been said here is sufficient to show that this Court is duty bound to terminate these proceedings for want of jurisdiction. It will, however, perhaps be well to further note that plaintiff has failed to allege the existence of facts, which would afford plaintiff standing to sue for the relief sought. This case deals with the delicate problem of adjusting relationships between the State and the Federal Governments. Plaintiff has shown no warrant in the statutes for interference by a private suitor in what is essentially an affair of the sovereigns. It is for Congress to determine when its paramount power shall be brought into play (Gilman v. City of Philadelphia, supra). If Congress does not object to the State, or one of its political subdivisions, building a bridge across navigable waters, this Court is not at liberty to assert this paramount federal power for itself (State of Pennsylvania v. Wheeling and Belmont Bridge Co., 18 How. 421, 59 U.S. 421, 15 L.Ed. 435; Northern Transp. Co. v. City of Chicago, 99 U.S. 635, 25 L.Ed. 336; and In re Clinton Bridge (Gray v. Chicago, I. & N. Ry. Co.), 10 Wall. 454, 77 U.S. 454, 19 L.Ed. 969).

■ At most, all that the allegations of plaintiff can show is that the proposed bridge may be a public nuisance. If such it be, it is for the public authorities to abate such a nuisance. A private party could institute such an action only if he could show special damage to himself, thus in effect making it a private nuisance as to him (Northern Pacific Ry. Co. v. Whalen, 149 U.S. 157, 13 S.Ct. 822, 37 L.Ed. 686; 39 Am.Jur.

---

To the contrary, it appears to be the position of plaintiff that the bridge, even if built as originally planned, will render the waterway useless for all sailing craft above a certain size.

The span could be built in three ways: (1) integrated into the structure of the bridge; (2) removable, that is, so built that it could be floated out on special occasions with special machinery; or (3) movable, so that it could be opened and closed by machinery regularly installed in connection with the bridge. Plaintiff contends that the bridge will obstruct pleasure boat navigation unless the span is of the third type. The approved plans call for a removable span. Plaintiff con-

tends that such a span will destroy the use of the waterway for pleasure craft. Plaintiff does not suggest that any additional harm would result should the span be integrated into the structure of the bridge.

Similarly, the width of the bridge is not shown to be of detrimental consequence to plaintiff. If a sailboat can unstep its mast to go under a bridge twenty feet wide, it can go an extra six feet without materially greater inconvenience.

In connection with plaintiff's complaints, it should be noted that the defendant Morris unequivocally denies that he will deviate from the approved plans.

§ 379). Plaintiff has set forth no allegation which shows, or tends to show, that it has been, or will be, damaged in any way by construction of the proposed bridge. Plaintiff alleges that it is a California corporation, authorized to represent sportsmen, whose membership includes 38 yacht clubs, with 5,000 members or more, and that these 5,000 members use, or desire to use, Montezuma Slough for the operation of pleasure boats. Plaintiff then alleges that it brings this action as a class action on behalf of all the 9,000, or more, individuals who may use, or desire to use, said waterway. Lastly, plaintiff alleges that the construction of the threatened bridge will cause irreparable damage. There is no allegation which attempts to show any special damages, which are different in degree or kind from the alleged damages to the rights of the general public. The facts are that it is evident that the damages, which it is asserted will be suffered by any of the 5,000 or 9,000 individuals, in whose behalf plaintiff brings this suit, are no different from the damages, if any, which will be suffered by the public generally.

No single individual out of the 9,000 could invoke the jurisdiction of this Court in this case (Northern Pacific Ry. Co. v. Whalen, supra; Carver v. San Pedro, L. A. & S. L. Ry. Co., C.C., 151 F. 334; Silvey v. Comm'rs of Montgomery County, D.C., 273 F. 202). Banding together a group of individuals who could not invoke the jurisdiction of this Court does not cloak the group with rights not granted to the several individuals. Plaintiff may not bring this suit on behalf of its individual members under Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C., for the Rules do not enlarge the jurisdiction of this Court (Federal Rules of Civil Procedure, Rule 82). The drafters of the Rules did not intend to authorize any individual to usurp the role of *parens patriae*. This is what plaintiff, in effect, is seeking to do, and its position is, therefore, untenable.

It is the conclusion of this Court that plaintiff's complaint, and the cause of action sought to be stated in it, must be dismissed for want of jurisdiction. Having reached this conclusion, the question concerning whether defendants should be required to respond to plaintiff's requests for admission or interrogatories in this case becomes moot and requires no ruling.

It is, therefore, ordered that plaintiff's complaint on file in this case, and the cause of action sought to be stated therein, be, and it is, hereby dismissed.