## GWIN *v.* UNITED STATES.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 172. Argued February 26, 28, 1902.—Decided March 24, 1902.

A decree of the District Court of the United States for the Northern District of California, rendered in 1855, was affirmed by this court, and remanded to the District Court, where a final decree was entered in 1859. Subsequently in 1899, after a large amount of intermediate litigation, a petition of intervention was filed in the District Court in the original case, praying that the decree of 1859 might be ordered to be executed, the proceedings having been originally begun in 1852 before the board of land commissioners of California. A demurrer was filed to this petition, which was sustained and the petition dismissed. This was followed by another similar petition filed in 1900 which was also dismissed, and an appeal taken to this court. *Held:* that the appeal originally allowed to this court by the act of 1851 was repealed in 1864, and an appeal allowed to the Circuit Court of the United States; that this act was repealed by the act of 1891, which provided for an appeal to the Circuit Court of Appeals, and that the appeal to this court must therefore be dismissed.

THIS is an appeal from an order of the District Court of the United States for the Northern District of California sustaining a demurrer to, and dismissing the petition of, the appellants, intervenors, who prayed that a certain decree of the above-named District Court, made on November 30, 1859, be ordered to be executed.

It appears that on January 31, 1852, certain persons by the name of Peralta presented to and filed with the board of land commissioners, under the act of Congress " to ascertain and settle the private land claims in the State of California," passed March 3, 1851, 9 Stat. 631, a petition for the confirmation of the rancho of San Antonio. Subsequently the four claimants divided the lands among themselves in severalty, and the board, proceeding to examine the claim upon the evidence, decided in favor of its validity, but restricted the area of the grant by fixing the northern boundary line at San Antonio Creek, which included about one half of the claim. Both parties appealed from this decision, and the claim was certified to the District Court for the Northern District of California, in which court a transcript of the proceeding was filed September 23, 1854. The District Court upon the trial reversed the decree of the land commissioners, and declared the claim as set forth in the petition to be valid, by decree entered January 26, 1855.

From this decree the United States appealed to this court, which affirmed the decree of the District Court (1857). *United States* v. *Peralta*, 19 How. 343. Two controversies were decided : first, that the officers issuing the grant had power to make grants of land; and, second, that the northern boundary of the land extended beyond San Antonio Creek, according to the claim of the petitioners. Upon the mandate of this court being filed in the District Court a final decree was entered therein on November 30, 1859, slightly amending its former decree in substantial compliance with such mandate. This decree is still in force.

Afterwards, and on August 10, 1860, the surveyor general returned into court a corrected plat of a survey, purporting to be in conformity with the decree of November 30, 1859. Thereupon, and on October 8, 1860, one Carpentier and others filed

a petition of intervention, in which they claimed adversely so much land as lay under the waters of the estuary of San Antonio, up to the highest tide lands, through mesne conveyances from the State of California, and afterwards filed in court their exceptions to the survey. The United States also filed exceptions thereto. The litigation thus inaugurated continued for more than ten years, and finally resulted in a decree of the District Court, August 4, 1871, approving a modified survey of the tract, a certified plat of which had been filed in the clerk's office. An appeal was taken from this decree by the United States to the Circuit Court for the Ninth Judicial Circuit, by which court the appeal was dismissed July 31, 1874, and a decree entered that the claimants have leave to proceed under the decree confirming the survey as a final decree. The Commissioner of the General Land Office thereupon caused to be prepared and recorded a patent of the United States for that portion of the lands included in the survey.

Thirty-seven years after the entry of the decree of November 30, 1859, and twenty-two years after the dismissal of the above appeal in the Circuit Court, the successors in title of one of the Peraltas presented to the Commissioner of the General Land Office, September 2, 1896, a plat of a survey of the rancho San Antonio made by the surveyor general of California, November 25, 1895, under the act of Congress of July 23, 1866, 14 Stat. 218, with certified copies of the decree of November 30, 1859, with a request that he issue to the petitioners a patent in accordance with such plat of survey, which the Commissioner declined to do, September 22, 1896, and the Secretary of the Interior affirmed his decision. The appellants thereupon and on July 27, 1899, filed in the District Court for the Northern District of California a petition of intervention in the original case of the *United States* v. *Peralta*, praying that the decree of November 30, 1859, might be ordered to be executed; that the government be required to issue to the appellants its patent for so much of the lands of the rancho as had not theretofore been patented to them, or any of them. The United States demurred to the petition, which, on January 29, 1900, was dismissed.

This was followed by another similar petition, filed March 29, 1900, based upon the survey of 1895, which was also demurred to, and resulted in a decree, rendered May 28, 1900, sustaining the demurrer and dismissing the petition. Whereupon petitioners appealed to this court.

*Mr. James T. Boyd* for appellants. *Mr. George A. King* was on his brief.

*Mr. Matthew G. Reynolds* for the United States. *Mr. Solicitor General* was on his brief.

MR. JUSTICE BROWN delivered the opinion of the court.

The appeal in this case is taken from the decree of May 28, 1900, sustaining the demurrer to, and dismissing the petition of, the appellants, which was filed March 29, 1900.

Our jurisdiction of this appeal depends upon certain statutes, which it becomes necessary to consider. By the original act of March 3, 1851, 9 Stat. 631, to ascertain and settle the private land claims in the State of California, a commission of three persons was constituted (sec. 1) to settle such claims, whose duty it was (sec. 8) to decide upon their validity and to certify the same, with their reasons, to the district attorney of the United States. By sec. 9, an appeal was given to the District Court, which was empowered to review the decision of the commissioners, and to decide upon the validity of such claim. By sec. 10, the District Court was required, on application of the party against whom judgment was rendered, to grant an appeal to the Supreme Court of the United States. It was held in *United States* v. *Fossatt*, 21 How. 445, that the jurisdiction of the board of commissioners extended not only to the adjudication of questions relating to the genuineness and authenticity of the grant, but also to all questions relating to its location and boundaries; and that it did not terminate until the issue of a patent conformable to the decree.

The law remained in this condition until 1864, when on July 1 an act was passed, 13 Stat. 332, " to expedite the settlement

of titles to lands in the State of California," the second section which provided " that where proceedings for the correction or confirmation of a survey are pending . . . it shall be lawful for such District Court to proceed and complete its examination and determination of the matter, and its decree thereon shall be subject to appeal to the Circuit Court of the United States for the district, in like manner, and with like effect, as hereafter provided for in appeals in other cases to the Circuit Court." By section three it was enacted " that where a plat and survey have already been approved or corrected by one of the District Courts, . . . and an appeal from the decree of approval or correction, has already been taken to the Supreme Court of the United States, the said Supreme Court shall have jurisdiction to hear and determine the appeal. But where from such decree of approval or correction no appeal has been taken to the Supreme Court, no appeal to that court shall be allowed, but an appeal may be taken within twelve months after this act shall take effect, to the Circuit Court of the United States for California, and said Circuit Court shall proceed to fully determine the matter."

It appears perfectly clear from section three that the appellate jurisdiction of the Supreme Court was taken away, except as to cases where an appeal had already been taken. With this exception appeals must be taken under that act to the Circuit Court. The law remained in that condition until the passage of the Court of Appeals Act of March 3, 1891, 26 Stat. 826, by the fifth section of which appeals can only be taken directly from the District Court to this court in cases where the jurisdiction of the District Court is in issue, in prize cases, criminal cases, constitutional cases, or cases involving the validity or construction of a treaty. As to all other cases, by section six, appeal must be taken to the Circuit Court of Appeals. As we said in *McLish* v. *Roff*, 141 U. S. 661, this act provides for the distribution of the *entire* appellate jurisdiction of our national judicial system between the Supreme Court and the Circuit Court of Appeals. As this case does not fall within any of the classes excepted by section five, it is clear that if any appeal will lie at all, it should have been taken to the Circuit Court

of Appeals, and that we have no jurisdiction to enforce the execution of this decree by appeal from the District Court. If the decree of November 30, 1859, rendered ·by the District Court in pursuance of the mandate of this court, were not a final decree, it became final either August 4, 1871, when the modified survey was approved, and an appeal was taken to the Circuit Court and the appeal dismissed by Mr. Justice Field, July 31, 1874, or upon May 28, 1900, from which the appeal was taken in this case.

It is clear that, so far as concerns appeals from final decrees, they must be taken under laws then in existence, and to the court provided by such laws. To say that a decree rendered in 1900 may be appealed to a court, whose jurisdiction to review it was taken away in 1864, is beyond belief. Even if the Court of Appeals Act do not apply to this case, the jurisdiction of this court was clearly taken away by the act of 1864, and transferred to the Circuit Court of the United States for California, except as to appeals which had already been taken. If there had been no reservation of pending cases, even such cases would have fallen within the law. *Railroad Co.* v. *Grant,* 98 U. S. 389, 401. In that case a writ of error had been sued out on December 6, 1875, to reverse a judgment of $2250 by the Supreme Court of the District of Columbia. At that time the appeal was properly taken to this court, but on February 25, 1879, Congress passed an act limiting writs of error from this court to judgments exceeding the value of $2500, and it was held that the writ of error must be dismissed. Said the Chief Justice: " The act of 1879 is undoubtedly prospective in its operation. It does not vacate or annul what has been done under the old law. It destroys no vested rights. It does not set aside any judgment already rendered by this court under the jurisdiction conferred by the Revised Statutes when in force. But a party to a suit has no vested right to an appeal or a writ of error from one court to another. Such privilege once granted may be taken away, and if taken away, pending proceedings in the appellate court stop just where the rescinding act finds them, unless special provision is made to the contrary. The Revised Statutes gave parties the right to remove

their cases to this court by writ of error and appeal, and gave us the authority to reëxamine, reverse or affirm judgments or decrees thus brought up. The repeal of that law does not vacate or annul an appeal or a writ of error already taken or sued out, but it takes away our right to hear and determine the cause, if the matter in dispute is less than the present jurisdictional amount. The appeal or the writ remains in full force, but we dismiss the suit because our jurisdiction is gone."

Similar cases are by no means infrequent in this court. Thus in *Yeaton* v. *United States*, 5 Cranch, 281, it was held that if the law, under which a sentence of forfeiture was inflicted, expired or was absolutely repealed after an appeal and before sentence by the appellate court, the sentence must be reversed. See also *The Schooner Rachel*, 6 Cranch, 329; *United States* v. *Preston*, 3 Pet. 57; *Norris* v. *Crocker*, 13 How. 429. In *Insurance Co.* v. *Ritchie*, 5 Wall. 541, it was held that the jurisdiction of the Circuit Courts between citizens of the same State in internal revenue cases, conferred by the act of 1864, was taken away by the act of 1866, and that cases pending at the passage of the act fell with its repeal. *Ex parte McCardle*, 7 Wall. 506. These cases fully establish the proposition that a repealing statute which contains no saving clause operates as well upon pending cases as upon those thereafter commenced.

In the case under consideration there was a saving of suits already begun, but there was an express proviso that, where no appeal had been taken to the Supreme Court, no appeal to that court should be allowed. That law remained unchanged until the Court of Appeals Act of 1891, to which all appeals from Circuit or District Court must now be taken, with a few specified exceptions.

The appeal must be

*Dismissed.*