**HARTMANN v. SLOAN, U. S. Marshal.***

No. 6564.

Circuit Court of Appeals, Third Circuit.

Nov. 1, 1938.

John E. Green, Jr., and A. D. Gray, both of Houston, Tex., and David A. Reed and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., for appellant.

John Henry Lewin, Hammond E. Chaffetz, W. B. Watson Snyder, and Grant W. Kelleher, Sp. Assts. to Atty. Gen., Thurman Arnold, Asst. Atty. Gen., and Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., for appellee.

Before DAVIS, BIGGS, and MARIS, Circuit Judges.

BIGGS, Circuit Judge.

The appellant, a resident of Pittsburgh, Pennsylvania, has appealed from a judgment of the District Court of the United States for the Western District of Pennsylvania, discharging a writ of habeas corpus sued out by him against the appellee, the United States Marshal for the Western District of Pennsylvania, to prevent the appellant's removal to the Western District of Wisconsin for trial upon an indictment charging him and others with a conspiracy to violate the anti-trust laws of the United States. The final judgment of the court below was entered upon September 1, 1937, and by it the appellant was remanded to the custody of the appellee for removal to Wisconsin. Upon the same day an appeal from the judgment was taken to this court. Argument in the case was heard by us upon June 7, 1938. Upon August 30, 1938, the appellee filed a motion to dismiss the appeal upon the grounds indicated hereafter. Argument was had upon this motion upon October 13, 1938.

The habeas corpus proceedings were instituted to test the validity of the warrant for the removal of the appellant to Wisconsin for trial upon the indictment referred to. It is undisputed that this warrant was issued pursuant to the provisions of R.S. § 1014, May 28, 1896, c. 252, Sec. 19, 29 Stat. 184, Mar. 2, 1901, c. 814, 31 Stat. 956, 18 U.S.C.A. § 591. Jurisdiction of this court for the appeal is based therefore upon the provisions of the Act of Congress of February 13, 1925, c. 229, Sec. 6, 43 Stat. 940, 28 U.S.C.A. § 463. The Seventy-Fifth Congress, however, by Public Act No. 772, approved June 29, 1938, amended the provisions of subsection (a) of the Act of February 13, 1925, c. 229, Sec. 6, 43 Stat. 940, 28 U.S.C.A. § 463, so that it now reads as follows,

*Rehearing denied Dec. 7, 1938.

the amended portion of the statute being that following the colon: "In a proceeding in habeas corpus in a district court, or before a district judge or circuit judge, the final order shall be subject to review, on appeal, by the circuit court of appeals of the circuit wherein the proceeding is had: Provided, however, That there shall be no right of appeal from such order in any habeas corpus proceeding to test the validity of a warrant of removal issued pursuant to the provisions of Section 1014 of the Revised Statutes [section 591 of Title 18] or the detention pending removal proceedings. * * *" It is manifest therefore that the appeal was taken has been amended in such wise as to withdraw the right of appeal to the Circuit Courts of Appeals from persons who seek by habeas corpus proceedings to test the validity of warrants of removal issued pursuant to the provisions of Section 1014 of the Revised Statutes, 18 U.S.C.A. § 591. The appellant concedes and indeed himself points out that the privilege of appealing from a lower court to a higher one is not an inherent right in any case but is a right conferred by statute or by express constitutional grant. He distinguishes, however, between the right of appeal to an appellate court and the right of an appellate court to adjudicate an appeal already taken and contends that under the authorities it is plain that though the right of future appeal has been done away with in cases of habeas corpus proceedings to test the validity of a warrant of removal as of the effective date of the amendment, none the less the jurisdiction of this court remains to adjudicate Hartmann's appeal since it was perfected prior to the amendment.

The appellant relies principally upon three decisions of the Supreme Court. We deem it desirable to discuss these briefly. In Ex parte McCardle, 74 U.S. 506, 7 Wall. 506, 19 L.Ed. 264, McCardle, charged with the publication of libelous and incendiary articles and held for trial before a military commission by military authorities, petitioned the United States Circuit Court for a writ of habeas corpus, alleging that he was unlawfully restrained by military force. The military commander made a return to the petition admitting McCardle's restraint but denying that it was unlawful. McCardle appealed from the order of the circuit court to the Supreme Court of the United States. His

appeal was taken pursuant to the provisions of the Act of 1867 (14 Stat. at L. 385). While the appeal was pending Congress passed the Act of March 27, 1868 (15 Stat. at L. 44), which provided that so much of the earlier Act referred to "* * * as authorizes an appeal from the judgment of the circuit court to the Supreme Court of the United States, or the exercise of any such jurisdiction by said Supreme Court on appeals which have been or may hereafter be taken, be, and the same is, hereby repealed." The Supreme Court held that it was deprived of jurisdiction and therefore could not proceed to adjudicate the appeal.

In Baltimore & Potomac R. Co. v. Grant, 98 U.S. 398, 25 L.Ed. 231, the Supreme Court had before it a motion to dismiss a writ of error to the Supreme Court of the District of Columbia in a case involving the sum of $2,250. When the writ of error was allowed R.S. §§ 846 and 847 provided that a final judgment of the Supreme Court of the District of Columbia might be "re-examined and reversed or affirmed" by the Supreme Court of the United States upon writ of error or appeal, but that a cause (with certain exceptions not pertinent here) might not be removed from the Supreme Court of the District of Columbia to the Supreme Court of the United States "* * * unless the matter in dispute in such cause shall be of the value of $1,000 or upward * * *". While the appeal was pending Congress passed the Act of February 25, 1879 (20 Stat. at L. 320), Section 4 of which provided that a final judgment of the Supreme Court of the District "* * * in any case where the matter in dispute * * * exceeds the value of twenty-five hundred dollars, may be re-examined and reversed or affirmed in the supreme court of the United States, upon writ of error or appeal * * *". The Supreme Court in the cited case held that the new act repealed the old and stated that the Act of 1879 was undoubtedly prospective in its operation and did not have the effect of vacating or annulling what had been done under the old law. The opinion of the court makes plain, however, that though the new act did not vacate or annul an appeal or a writ already taken or sued out, it none the less deprived the Supreme Court of the right to hear and determine the appeal. Mr. Justice Waite said [page 402], "The appeal or the writ remains in full force, but

we dismiss the suit, because our jurisdiction is gone."

It will be seen that neither the McCardle Case nor the Grant Case is determinative of the question here presented since in each case the amendatory Act of Congress by its express terms withdrew the jurisdiction of the Supreme Court to adjudicate pending appeals. The appellant asserts, however, that United States v. Heirs of Boisdoré, 49 U.S. 113, 8 How. 113, 12 L.Ed. 1009, is direct authority for his contention that an act which withdraws only the right of appeal does not affect the jurisdiction of the appellate court with respect to appeals pending at the time of its passage. It thus becomes important to consider the facts of that case in order to determine whether they are in truth analogous to the present situation. The facts were these.

By the Act of May 26, 1824 (4 Stat. at L. 52) Congress authorized land claimants within the State of Missouri to litigate their claims in the District Court in proceedings to be conducted according to the rules of equity. It was provided that the party against whom the decree of the District Court was rendered should be entitled to an appeal to the Supreme Court of the United States within one year from the date of the judgment in the court below. Section 5 of the Act provided "that any claim * * * which shall not be brought by petition before the said courts, within two years from the passing of this .act, or which, after being brought before the said courts, shall, on account of the neglect or delay of the claimant, not be prosecuted to a final decision within three years, shall be forever barred." The last section of the Act (14) extended its provisions to the territory of Arkansas. There was no. other time limitation contained in- the Act. The Act of June 17, 1844 (5, Stat. at L. 676) provided, "That so much of the expired act of the twenty-sixth of May, one thousand eight hundred and twenty-four, entitled 'An act to enable claimants to land within the State of Missouri and Territory of Arkansas, to institute proceedings to try the validity of their claims,' as related to the State of Missouri, * * * be, and is hereby, revived and re-enacted, and continued in force for the' term of five years, and no longer; and the provisions of that part of the aforesaid act hereby revived and re-enacted shall be, and hereby are, extended

* * *" to a portion of the State of Mississippi, "* * * in the same way and with the same rights, powers, and jurisdictions, to every extent they can be rendered applicable, as if these States had been enumerated in the original act hereby revived, and the enactments expressly applied to them as to the State of Missouri."

The petition of the Heirs of Boisdoré to have their rights to certain lands in the State of Mississippi adjudicated was filed in the District Court of Mississippi on February 1, 1845. The District Court entered a decree confirming the Boisdoré concession on November 12, 1847, and on that day the United States took an appeal to the Supreme Court. At the January Term in 1850 a motion was made to dismiss the appeal upon the ground that the Act of 1844 which extended to the State of Mississippi the Act of 1824 limited the duration of both acts to five years, which period having expired on June 17, 1849, the court no longer had appellate jurisdiction. This motion the court overruled. The grounds for its action clearly appear from the opinion of Chief Justice Taney. He pointed out that the Act of 1844 in referring to the Act of 1824 as having expired was inaccurate since the latter Act had not expired but was still in force. What had happened was that the limitations which that Act imposed of two years for the commencement of suits and of three years more for prosecuting them in the District Court had expired. These limitations, however, did not affect the right given by the Act to take an appeal within one year after judgment in the District Court or the jurisdiction of the Supreme Court to hear and determine the appeal. Chief Justice Taney said (page 122):

"And it was evidently the intention of the act of 1844 to place the claims under Spanish and French grants in the States therein mentioned upon precisely the same footing with the claims in Missouri and the Territory of Arkansas, and to give the claimants the same rights and remedies, including the right to appeal to this court. For it declares in express terms, that the act of 1824 shall be extended to them, 'in the same way, and with the same rights, and powers, and jurisdictions to every extent they can be rendered applicable, as if these States had been enumerated in the original act thereby revived; and the enact-

ments expressly applied to them, as to the State of Missouri.' Now, if they had been included in the original act, and the enactments applied to them as to the State of Missouri, it is admitted that the appellate jurisdiction of this court would not be limited to five years. And if it would not, it necessarily follows that it is not limited by the act when reënacted and extended by the law of 1844. For if it were to be so limited, and the jurisdiction of this court ceased in five years, the rights and powers and jurisdictions in relation to the claimants in these States would be different from what they would have been if they had been included in the original law. Such a construction would in effect take away the jurisdiction of this court, and deprive each party of the right to appeal within twelve months in the cases decided in the last year of the five, and would make the appeal in almost every case inefficient and nugatory. Certainly, there could be no reason of policy or justice for making such a difference in the jurisdiction of this court in different classes of similar cases; nor could such have been intended."

It will thus be seen that the facts of the Boisdoré Case are in no sense analogous to those of the case at bar. All that was decided by the Boisdoré Case was that appellate jurisdiction conferred by an act which is subsequently extended to cases arising in other territorial jurisdictions is not withdrawn because of the inartistic language of the extending act where its intent and purpose was to confer upon courts in the territory to which the original act was extended the same jurisdiction and powers as had been conferred by the original act upon the courts in the territory to which it applied. We think it needs no further discussion to demonstrate that the Boisdoré Case cannot be deemed to constitute authority for the appellant's position.

The appellee for his part cites Gwin v. United States, 184 U.S. 669, 22 S.Ct. 526, 46 L.Ed. 741. In this case a suit was brought to confirm title in a land grant under the provisions of the Act of March 3, 1851 (9 Stat. at L. 631), which provided for a review of the decisions of land commissioners by the District Court of California and for an appeal from the District Court of California to the Supreme Court of the United States. The Peraltas filed a petition to have confirmed their title to the rancho of San Antonio and after a decision had been reached in their favor in part by the district court took an appeal to the Supreme Court of the United States. The Supreme Court affirmed the decree of the court below adjudicating the rights of the parties, and in 1859 the district court entered a final decree. The act under which the decree was entered remained unchanged until July 1, 1864, when an Act (13 Stat. at L. 332) was passed which provided among other things " * * * that where a plat and survey have already been approved or corrected by one of the district courts, * * * and an appeal from the decree of approval or correction has already been taken to the supreme court of the United States, the said supreme court shall have jurisdiction to hear and determine the appeal. But where from such decree of approval or correction no appeal has been taken to the supreme court, no appeal to that court shall be allowed, but an appeal may be taken, within twelve months after this act shall take effect, to the circuit court of the United States for California, and said circuit court shall proceed to fully determine the matter." Upon March 3, 1891, Congress passed the Court of Appeals Act (26 Stat. at L. 826) which provided for appeals, except in excepted cases from the district courts to the circuit courts of appeals. In 1899 the successors in title of the original claimants of the land, after a great deal of intermediate litigation, filed a petition in the district court in the original case praying execution of the final decree of 1859. A demurrer was sustained in the district court to this petition and it was dismissed. In 1900 a similar petition was filed which also was dismissed and an appeal was taken to the Supreme Court. Mr. Justice Brown, delivering the opinion of the Supreme Court, stated [page 528], "It appears perfectly clear from § 3 that the appellate jurisdiction of the Supreme Court was taken away, except as to cases where an appeal had already been taken * * *". He went on to state: "To say that a decree rendered in 1900 may be appealed to a court whose jurisdiction to review it was taken away in 1864 is beyond belief. Even if the court of appeals act do not apply to this case, the jurisdiction of this court was clearly taken away by the act of 1864, and transferred to the

circuit court of the United States for California, except as to appeals which had already been taken. If there had been no reservation of pending cases, even such cases would have fallen within the law." It will be perceived that in the cited case no appeal was pending before the Supreme Court at the time of the amending acts. The appellant takes the position that since the right of appeal to the Supreme Court was taken away by the Act of 1864, the last sentence of the opinion quoted was added obiter, but none the less we deem the cited case to be highly persuasive under the facts of the case at bar since by its language the Supreme Court plainly indicates that where the right of appeal has been repealed, unless there be a saving clause, the jurisdiction of the appellate court to adjudicate the appeal is obliterated along with the right of appeal.

The distinction sought to be made by the appellant between the right of appeal and the jurisdiction of the appellate court to hear it has been most ably presented. As we have seen, however, it is not supported by the authorities and we think it is too fine to be cognizable. It must be borne in mind that a party to a suit has no vested right to an appeal. Baltimore & Potomac R. Co. v. Grant, supra. The Act of June 29, 1938, 28 U.S.C.A. § 463, with which we are here concerned expressly withdrew the right of appeal from an order of the type here appealed from. It did so by attaching a proviso to that effect to the very statute which originally conferred upon this court jurisdiction of such appeals. The withdrawal of the right of appeal is absolute and there is no reservation of pending appeals from its provisions. We think it operated likewise to withdraw our jurisdiction and we accordingly conclude that our power to proceed with the determination of the present appeal fell with the right of appeal.

In view of our conclusion that the appeal must be dismissed it is unnecessary and indeed improper at this time for us to consider the merits of the appeal. We think it proper to say however that before the Act of June 29, 1938 was passed, this court upon consideration of the merits of the appeal had reached the conclusion that the judgment of the court below must be affirmed.

The appeal is dismissed.