461 F.2d 1240
 18 A.L.R.Fed. 890, 149 U.S.App.D.C. 154
 Patrocinia L. Vda De RODULFA,
v.
UNITED STATES of America and Administrator of Veterans
Affairs, Appellants.
Juliana Caparas Vda del Rosario
v.
UNITED STATES of America and Donald E. Johnson,
Administrator of Veterans Affairs, Appellants.
 Nos. 22947, 23000.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 3, 1969.
Decided March 24, 1972.
Rehearing Denied May 12, 1972.
 
 Mr. David V. Seaman, Atty., Dept. of Justice, with whom Mr. Alan S. Rosenthal, Atty., Dept. of Justice, was on the brief, for appellants.
 Mr. Henry F. Lerch, Washington, D. C., for appellee in No. 22947. Mr. Robert L. Pillote, Washington, D. C., also entered an appearance for appellee in No. 22947.
 Mr. Harold J. Nussbaum, Washington, D. C., for appellee in No. 23000.
 Before WRIGHT, McGOWAN and ROBINSON, Circuit Judges.
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 
 1
 These cases arrived here as controversies over the propriety of awards of counsel fees for services on appellees' behalf while the litigation resided in the District Court. Each was a suit seeking recovery of benefits allegedly accruing under the veterans laws; each culminated in a judgment directing reinstatement of previously terminated installments of death compensation and deduction of the fees from the sums reinstated. Our consideration of the contest over the fees was interrupted, however, by the need to determine whether a change-while the appeals were under submission-in the statute governing judicial review of decisions of the Administrator of Veterans' Affairs on claims for noncontractual benefits deprives the courts of jurisdiction to deal with such matters. Concluding that it does, we vacate the fee awards and dismiss the appeals.
 
 
 2
 * The de Rodulfa Case
 
 
 3
 Jose B. de Rodulfa, husband of one of the appellees, died in the line of duty while serving with the Philippine scouts in 1942. In 1945, his widow filed claims with the Veterans' Administration for wartime death compensation[1] and National Service Life Insurance benefits[2] for herself and the two minor children by her marriage to the decedent, and benefits of each kind were granted. After the application was submitted and before the benefits began, one of the children died. Mrs. de Rodulfa did not communicate this fact to the Veterans' Administration, and she accepted benefits on the deceased child's account.
 
 
 4
 In 1955, the Veterans' Administration discovered this change in the family's status and declared a forfeiture of the entire compensation award because of the failure to report the death and the acceptance of benefits for the child. On independent grounds, payments pursuant to the insurance award were also discontinued shortly thereafter.[3] Mrs. de Rodulfa appealed both terminations administratively, but the claims were finally denied in 1957.
 
 
 5
 In 1965, Mrs. de Rodulfa filed in the District Court a pro se complaint against the United States seeking to have the benefits reinstated. She asked the court to appoint designated attorneys to represent her, and "to amend the complaint if necessary, and to deduct ten percentum (10%) from the claim as [her] attorney's fees if the claim is successful." The court granted the request for appointment of counsel, and allowed amendment of the complaint and joinder of the Administrator of Veterans' Affairs as a defendant. The amended complaint demanded restoration of the forfeited benefits and requested an allowance of counsel fees out of the recovery. The suit was resisted on a number of grounds, in large measure jurisdictional in character.[4]
 
 
 6
 The case was tried without a jury. The court dismissed the claim for National Service Life Insurance benefits as timebarred[5] but, declaring the Administrator's forfeiture of the compensation award to be "null and void," ordered reinstatement of those benefits by the Administrator. The court's judgment specifically directed payment of all wartime death compensation benefits "to date, and to become due," subject to credit for payments made on account of the deceased child and adjustments related thereto.[6] Counsel for Mrs. De Rodulfa thereafter filed a memorandum requesting an allowance of fees and the Government submitted an opposition. The court rendered an opinion rejecting the argument that statutory restrictions precluded a grant of counsel fees,[7] and entered an order amending the judgment to provide for a fee of 25 percent "of all sums due and payable . . . pursuant thereto," to be withheld by the Administrator from monies due Mrs. de Rodulfa and paid to counsel. This appeal by the United States and the Administrator followed.[8]
 
 The del Rosario Case
 
 7
 The companion case is very similar. Nicanor del Rosario died in 1942 in the military service of the United States. His widow applied in 1945 for and received benefits under the National Service Life Insurance and the wartime death compensation provisions for herself and her four minor children by the deceased serviceman. One of the children, however, had died before she filed the claim. This she did not report to the Veterans' Administration, and payments continued as though the child was alive. In 1954, these facts became known to the Administrator, who then forfeited her wartime death compensation award and established a continuing offset of accruing insurance benefits against the past overpayment of compensation.
 
 
 8
 After exhausting all administrative remedies without success, Mrs. del Rosario filed a pro se complaint in 1967 against the Administrator, with the United States as codefendant, to compel resumption of the discontinued payments. The complaint asked that a named attorney be appointed by the court to represent her and "that he be awarded reasonable counsel fees for his services." The court made the requested appointment, and counsel later submitted a memorandum soliciting an allowance of fees. The case was ultimately disposed of, over jurisdictional objections,[9] by a final judgment on cross-motions for summary judgment. The court denied an affirmative judgment on the insurance claim[10] but ordered the Administrator to reinstate and pay past due and future accruing wartime death compensation benefits for Mrs. del Rosario and her three remaining children, with a credit for unrecovered overpayments on the account of the deceased child and adjustments incidental thereto. The judgment, citing the opinion in de Rodulfa,[11] also allowed and required the Administrator to withhold 20 per cent "of all sums due and payable . . . pursuant hereto" as the fees of her counsel.[12] The United States and the Administrator are here for review of the fee award.[13]
 
 II
 
 9
 When the District Court passed its judgments in these cases, 38 U.S.C. Sec. 211(a) provided, with exceptions not relevant, that "the decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive. . . ."[14] It further provided, with greater emphasis on nonreviewability, that "no other official or any court of the United States shall have power or jurisdiction to review any such decision."[15] We have never doubted that provisions of that sort jurisdictionally outlawed any judicial review of the Administrator's action taken upon a claim for noncontractual benefits when the claim was first presented.[16] However, in Wellman v. Whittier[17] in 1958, and in Thompson v. Gleason[18] four years later, this court read the word "claim" as referable only to a claimant's original application for benefits, and accordingly held that Section 211(a) did not render nonreviewable a decision by the Administrator to terminate benefits previously awarded. And in 1967, in Tracy v. Gleason,[19] the court solidified this construction by overruling three earlier cases[20] to the extent that they conflicted with it.[21] In its rulings in the instant cases, the District Court, very properly, remained advertent to the Wellman-Thompson-Tracy interpretation, and over objection[22] assumed jurisdiction to review the forfeitures which had occurred in each.
 
 
 10
 After the cases reached this court, they were briefed, argued, and submitted on the central question whether the District Court had authority to make awards of counsel fees in suits of their type, and if so whether the awards were reasonable in amount. While the cases were under submission, however, Congress amended Section 211(a) to read as follows:
 
 
 11
 On and after October 17, 1940, except as provided in sections 775, 784, and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.[23]
 
 
 12
 Thus a new question arose-the effect, if any, of the amendment upon these appeals. The parties have addressed this issue in extensive post-argument briefing. We ourselves have exhaustively researched and painstakingly examined the problem in each of its several ramifications.
 
 
 13
 It is important to identify, at the outset of consideration of this problem, just what are and what are not before us as the particular subjects of the appeals. In each case, the District Court awarded a judgment in favor of the widow-claimant directing the Administrator to remit all unpaid wartime death compensation benefits accrued to the date of judgment and all benefits of that type accruing thereafter.[24] In each, the court further directed that a percentage of all sums due and becoming due and otherwise payable to the claimants be withheld for payment to counsel as fees.[25] To be noted with the greatest care is the fact that appellants appealed-and thus brought before us-only so much of the judgments as awarded counsel fees, leaving all other provisions-those ordering payments to the claimants-as they were.[26]
 
 
 14
 The latter is a consequence appellants fully realize. They argue that "[s]ince the specific counsel fees allowed by the court below were appealed and remain non-final, such awards must now be vacated and these cases remanded with directions to disallow all fees."[27] "But otherwise," appellants acknowledge, "the underlying judgments have not been brought before this Court. . . . Except as to the fees, therefore, we suggest that no action by this Court is presently indicated."[28]
 
 
 15
 We agree that the judgments exclusive of the fee awards-that is, the portions directing payment of benefits to the widow-claimants-are beyond the purview of these appeals. Those portions are adjudications by the District Court that became final, because they were not appealed, before the change in Section 211(a) was forthcoming. Nothing we can do on the present appeals can affect them, and nothing we say now is intended to reflect upon them.[29] We also agree that the fate of the fee awards, in terms of amended Section 211(a), depends upon the effect the amendment would legitimately have exerted upon so much of the benefits as underlay such awards if the benefits themselves were the subject of appeal.
 
 
 16
 The fees were simply incidents of the litigation in the District Court, which centered on alleged error in the Administrator's termination of wartime death compensation being paid to the widow-claimants. Payment of the fees was directed only because the District Court adjudged that the Administrator's action was erroneous, and because that adjudication, in turn, provided a source from which payment of the fees could be made. Under the terms of the court's judgments, the fees were payable from monies which otherwise would have gone to the widows, and the monies representing the fee awards are held by appellants. The parts of the judgments awarding the fees have always been the targets of these appeals-now on the ground that this court lacks jurisdiction to do aught but leave the Administrator's ruling standing as to so much of the judgments as have not achieved finality. In the words of Justice Holmes in a similar context, "[w]hen the root is cut the branches fall;"[30] and if indeed the amendment of Section 211(a) severed the root of the litigation, the branch dealing with counsel fees must tumble likewise.
 
 III
 
 17
 Prospective rather than retrospective application is decidedly the preferred judicial treatment of legislation. "Retroactivity," the Supreme Court has declared, "even where permissible, is not favored, except upon the clearest mandate,"[31] and we ourselves have echoed the same maxim.[32] Thus "statutes are not to be applied retroactively 'unless the words used are so clear, strong and imperative that no other meaning can be annexed to them or unless the intention of the legislature cannot be otherwise satisfied."'[33] This canon, moreover, responds to a special call when the legislation under consideration is antithetical to previously arising economic expectancies. For quite obvious reasons, "a retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature."'[34]
 
 
 18
 These all, however, are but principles of construction available for service when the legislative intention is open to some doubt. Courts exist to minister, not beget, legislative objectives, and to effectuate them once they are definitely identified. Judges have responsibility, not for the wisdom of the legislation, but surely for scrupulous observance of the legislative will. And "[w]hen the Congress plainly intends retrospective effect, . . . the courts must interpret the enactment accordingly, unless to do so would result in a clear infraction of a constitutional provision."[35] Congress, in its recent amendment of Section 211(a), made it crystal clear that its goal was to exclude from judicial review all administrative forfeitures of previously awarded noncontractual benefits, whether drawn into pending litigation or not. That conclusion we draw from the legislative history of the amendment and from its present text as well.
 
 
 19
 The change was initiated by the House Committee on Veterans' Affairs, and the Committee's report illumines both the problem it addressed and the solution it proposed. It called attention to the fact that "[f]or many years before 1958, based on statutory provisions similar to that now appearing as 38 U. S.C. 211(a), the Federal courts held that decisions of officials responsible for administering laws providing noncontractual benefits to veterans and their dependents and survivors were not subject to judicial review. U.S.Code Cong. & Admin. News, p. 3729."[36] Adverting to the text of the then current Section 211 (a), the Committee felt that "[t]his language would seem to be perfectly clear in expressing the congressional intent that any and all decisions of the Administrator on questions of entitlement to veterans' benefits (except for certain contractual benefits which were specifically excluded from the application of this provision) were to be final and not subject to judicial review. U.S.Code Cong. & Admin.News, p. 3729."[37]
 
 
 20
 The Committee then referred to the Wellman-Thompson-Tracy exception to nonreviewability developed in this circuit[38] and to the door those cases had opened to judicial review. The Committee had before it a report from the Administrator,[39] which it appended to its own report[40] describing vividly the effects which Tracy had wrought. "[S]oon after the Tracy decision," said the Administrator, "suits in the nature of mandamus or for declaratory judgment commenced to be filed in the U. S. District Court for the District of Columbia in constantly increasing numbers by plaintiffs seeking resumption of terminated benefits. As of March 8, 1970, 353 suits of this type had been filed in the District of Columbia circuit."[41] "[I]t seems obvious," the Administrator continued, "that suits similar to the several hundred already filed can-and undoubtedly will-subject nearly every aspect of our benefit determinations to judicial review, including rating decisions, related Veterans' Administration regulations, Administrator's decisions, and various adjudication procedures."[42]
 
 
 21
 These data the Committee duly noted: "Since the decision in the Tracy case-and as the result of that decision and the Wellman and Thompson decisions-suits in constantly increasing numbers have been filed in the U. S. District Court for the District of Columbia by plaintiffs seeking a resumption of terminated benefits. U.S.Code Cong. & Admin.News, p. 3730."[43] After describing summarily the variety of questions which had been subjected to judicial scrutiny, the Committee concluded:
 
 
 22
 It seems to this committee that it is quite clear that the Congress, in enacting the exemption from judicial review in [Section 211(a)], Congress, intended that exemption to be all inclusive and did not intend the fairly tortured construction adopted by the court of appeals in the Wellman, Thompson, and Tracy holdings. It is obvious that if the Congress had intended to authorize judicial review, it would not have adopted a form so inherently unfair as to deny review of any original claim for benefits; providing no time limitation or conditions governing such suits against the United States and its officials; and, contrary to all past practice in the veterans' benefits field (see 38 U.S.C. 784(g) and 3404(c)), establishing no limitation on attorney fees.
 
 
 23
 In view of the foregoing, this committee has included in . . ., a new subsection . . . which restates the provisions of subsection 211(a) of title 38, United States Code, to eliminate the word "claim" from that subsection. The restated subsection will provide that except for certain contractual benefits, the decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise. The provision is specifically made effective October 17, 1940, the date of enactment of [Section 211(a)]. The committee believes that this approach to solving the problem is preferable to . . ., i. e., adding a definition of the word "claim" to title 38, United States Code. The restated section 211(a) will make it perfectly clear that the Congress intends to exclude from judicial review all determinations with respect to noncontractual benefits provided for veterans and their dependents and survivors. U.S. Code Cong. & Admin.News, p. 3730.[44]
 
 
 24
 The language Congress chose in amending Section 211 (a) evinces the congressional will all the plainer. It makes "the decisions of the Administrator" in matters involving noncontractual benefits "final and conclusive" and denies to the courts "power or jurisdiction to review any such decision," not simply for the future but "[o]n and after October 17, 1940,"[45] the date upon which the older Section 211(a) became law. We cannot reconcile the specification in the amended section of a date almost 30 years earlier with any notion that Congress intended these proscriptions to apply only to litigation commenced from the date of amendment forward. We see no purpose to be served by reaching back to the effective date of the older finality statute than to impart to it a meaning Congress felt it should always have had. That objective could be achieved only by intercepting noncontractual claims already in court as well as those that had not arrived, and that is obviously what Congress did. We hold that Section 211(a) in amended form was directed at pending as well as future judicial reviews of the Administrator's determinations on claims for noncontractual benefits.
 
 IV
 
 25
 While, in the cases at bar, the amendment of Section 211(a) did not occur until after rendition of the judgments encompassing the awards of counsel fees,[46] that circumstance does not grant us liberty to ignore the statutory alteration which Congress has decreed. "A change in the law between a nisi prius and an appellate decision requires the appellate court to apply the changed law,"[47] for reasons which, in United States v. Schooner Peggy,[48] Chief Justice Marshall had occasion to articulate:
 
 
 26
 [I]f subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, . . . I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns . . . the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.[49]
 
 
 27
 And in the 170-odd years since Schooner Peggy, the decisions honoring changes pendente lite, whether in federal[50] or state[51] law, are legion. It is much too late in the day to indulge any notion that we are not bound to give the new Section 211(a) all the vigor Congress had in mind.
 
 
 28
 These appeals face, too, not changes merely affecting the merits of the cases or their procedural incidents, but what is indeed a complete withdrawal of jurisdiction to reexamine any determination by the Administrator in wartime death compensation cases. Amended Section 211(a) restores the law in this circuit to its pre-Wellman condition;[52] it sets for naught the exception to nonreviewability which the Wellman line of opinions had carved out for administratively forfeited compensation awards. It now makes it perfectly plain that no court has authority to disturb in any way the Administrator's disposition of any claim therefor.[53]
 
 
 29
 There is hardly room for doubting that had Section 211(a) been so amended before these cases had run their course in the District Court, it would have foreclosed any judgment favorable to the claimants.[54] That the judgments antedated the amendment makes for no difference in result as to so much of the judgments as were brought here for review. Amended Section 211(a) is as much a dissolution of our jurisdiction as it was of the District Court's,[55] and "when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law. . . ."[56] It is clear to us beyond peradventure that these appeals fell when Congress changed Section 211(a).
 
 
 30
 Three decades ago, we dealt similarly with the very problem which we encounter today. In Van Horne v. Hines,[57] the Veterans' Administration terminated an award of disability compensation previously made in favor of a World War I veteran, whereupon the latter sued the Administrator in the District Court for recovery of benefits which otherwise were payable thereafter. The District Court awarded the Administrator summary judgment, the veteran appealed, and while the appeal was pending the 1940 version of Section 211(a) was enacted.[58] The Administrator then moved for dismissal of the appeal for lack of jurisdiction, urging that the section "has the effect of depriving the courts of jurisdiction to review decisions of the Administrator in all cases and notwithstanding the appeal, as in the present case, was perfected prior to the time of its enactment."[59] We granted the motion, stating:
 
 
 31
 We think the Administrator's position is correct. . . . [The] benefits may be withdrawn at any time by act of Congress, and to make the withdrawal effective, Congress may in turn withdraw jurisdiction from the courts over decisions of the Administrator in relation thereto. . . . If, therefore, Congress has by the passage of the act withdrawn jurisdiction, it is of no consequence that the act became effective after the trial below and during the pendency of the appeal in this court, for the rule is well established that, where jurisdiction conferred by statute is prohibited by a later statute, jurisdiction ceases and causes pending at the time of the later enactment must be dismissed.[60]
 
 
 32
 We are, of course, mindful of holdings that a change of law does not retroactively affect a proceeding which has already been terminated by a final judgment prior to the change.[61] As the Supreme Court has admonished, "[i]t is not within the power of a legislature to take away rights which have been once vested by a judgment."[62] For "[l]egislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgments, the power of the legislature to disturb the rights created thereby ceases."[63] It is evident, however, that these precedents have no application here since, owing to the instant appeals, the awards of counsel fees have never become final. Surely counsel had no immutable right to payment of compensation from government funds at any time prior to to the entry of the judgments in the District Court.[64] Nor did they acquire such a right merely by virtue of the District Court's awards, which appellants have made the object of these appeals. "An appeal is not a new suit in the appellate court, but a continuation of the suit in the court below;"[65] it is "a proceeding in the original cause,"[66] and as such "is but a step toward the final adjudication of the original cause, which the law allows quite as much as its allows a defense in the first instance."[67] Thus "the suit is pending until the appeal is disposed of,"[68] and until disposition any judgment appealed from it is still sub judice.[69] While so remaining, the portions of the judgments in these cases granting counsel fees were not investitures of rights ipso facto unalterable by the legislature.[70]
 
 V
 
 33
 Counsel urge, however, that these appeals survived the amendment of Section 211(a) by reason of the General Savings Statute.[71] That statute in relevant part specifies that "[t]he repeal of any statute shall not have the effect to release or extinguish any . . . liability incurred under such statute, unless the repealing Act shall so expressly provide," and that "such statute shall be treated as still remaining in force for the purpose of sustaining any proper action . . . for the enforcement of such . . . liability. . . ."[72] The argument is that the Administrator's liability, which arose, if at all, before Congress changed Section 211(a), remains outstanding despite the change and makes a call upon the courts to enforce it. Upon examination, we find this contention to be unacceptable.
 
 
 34
 Initially, one may wonder just how the obligation asserted on appeal-for the payment of counsel fees-could be deemed a liability "incurred under" Section 211(a) in its pre-amendment formulation. For, in sharp contrast to the statutory provisions generating liability for the benefits inuring to their clients as widows of deceased veterans,[73] that section had nothing whatever to do with counsel fees. Moreover, no provision of the veterans laws attracting our attention during extensive independent research goes to the matter of counsel fees for in-court service in connection with wartime death compensation claims. This is but another way of saying that any "liability" for such fees must seek its source outside the scheme of those laws.[74]
 
 
 35
 But even if an obligation to compensate counsel was "incurred under" veterans legislation-and the underlying liability to the clients and their children surely was-the end result is the same. There is a great difference, in terms of the General Savings Statute, between the amendment or repeal of a statute which confers substantive rights and, on the other hand, one which removes the jurisdiction of the court to review administrative adjudications of rights. The modification Congress effected by amended Section 211(a) did not "release or extinguish" any liablity the Administrator had either to compensation beneficiaries or to their lawyers; rather, it left the Administrator's liabilities outstanding and litigable, albeit in administrative proceedings. That it sealed off judicial review of the administrative action did not bring the General Savings Statute into play. So much the precedents make abundantly clear.
 
 
 36
 In Bruner v. United States,[75] a civilian fire chief employed at a military installation sued the Government in a federal district court for overtime compensation, invoking a provision of a statute conferring concurrent jurisdiction on district courts and the Court of Claims over certain civil actions against the United States. Congress had also provided, however, that nothing in the statute should be taken as a grant to district courts of jurisdiction of cases brought to recover fees, salary, or compensation for official services of "officers" of the United States. The plaintiff's theory was that he was not an "officer," but only an "employee," of the United States, and so was not affected by the jurisdictional exclusion. After the case had reached the Supreme Court, Congress expanded the exclusion to embrace federal employees as well as federal officers, thereby relegating suits by either to the Court of Claims, without any reservation of jurisdiction over pending cases. The Court rejected the contention that the General Savings Statute sustained the litigation. "Congress has not altered the nature or validity of petitioner's rights or the Government's liability," the Court said, "but has simply reduced the number of tribunals authorized to hear and determine such rights and liabilities."[76]
 
 
 37
 It cannot be doubted that the same conclusion follows where the tribunal to which the litigation is confined is an administrative agency. In Hallowell v. Commons,[77] suit was brought in a federal district court to establish an equitable title in the alleged heirs of an intestate Indian allottee of land held in trust for him by the United States. Thereafter, Congress passed a law requiring the Secretary of the Interior to ascertain allottees' heirs and provided, without exception for pending cases, that the Secretary's decision would be final and conclusive. In dismissing the argument that the General Savings Statute kept the action alive, the Supreme Court pointed out that "the reference of the matter to the Secretary . . . takes away no substantive right, but simply changes the tribunal that is to hear the case."[78] "In doing so," the Court added, "it evinces a change of policy, and an opinion that the rights of the Indians can be better preserved by the quasi paternal supervision of the general head of Indian affairs."[79]
 
 
 38
 The cases before us, then, are not of the type that the General Savings Statute safeguards against statutory amendments or repeals. The vital difference between an alteration of substantive legislation, to which the statute might apply, and legislation wholly jurisdictional in character is vividly illustrated by De La Rama Steamship Company v. United States.[80] During World War II, the War Shipping Administration issued a policy of war risk insurance, an incident of which was a statutorily conferred right to prosecute an action for loss thereunder in a federal district court. Suit was brought for loss of a ship sunk by enemy action and during its pendency Congress repealed the legislation. The Supreme Court held that the case fell within the purview of the General Savings Statute, but in doing so carefully distinguished cases like those at bar. The Court said:
 
 
 39
 The Government rightly points to the difference between the repeal of statutes solely jurisdictional in their scope and the repeal of statutes which create rights and also prescribe how the rights are to be vindicated. In the latter statutes, "substantive" and "procedural" are not disparate categories; they are fused components of the expression of a policy. When the very purpose of Congress is to take away jurisdiction, of course it does not survive, even as to pending suits, unless expressly reserved. . . . If the aim is to destroy a tribunal or to take away cases from it, there is no basis for finding saving exceptions unless they are made explicit.[81]
 
 
 40
 The right to compensation consequent upon a veteran's death in wartime service is a creature of statute. Congress has provided, as the mechanism for consideration and disposition of claims for such compensation, a proceeding before the Veterans' Administration. Prior to the amendment of Section 211(a), the District Court's jurisdiction to review the Administrator, and our own jurisdiction to review the District Court, rested wholly upon the construction this court had placed on the section in forfeiture cases.[82] The amendment annulled that construction,[83] whereupon jurisdiction to reinstate forfeited benefits was lost, and with it jurisdiction to award counsel fees out of restored benefits.[84] We hold that the General Savings Statute lends no assistance to these appeals.VI
 
 
 41
 In holding that the amendment of Section 211(a) defeats the counsel fee awards made by the District Court, we do not mean to imply that the Constitution leaves for Government an unrestricted range when it engages in doling out public funds. "To characterize an act of Congress as conferring a 'public benefit' does not, of course, immunize it from scrutiny under the Fifth Amendment,"[85] nor does it license Congress to "exercise its power to modify the statutory scheme free of all constitutional restraint."[86] The interest of a potential recipient may well be "of sufficient substance to fall within the protection from arbitrary governmental action afforded by the Due Process Clause."[87] That interest may also command the respect which due process of law enjoins even in matters purely procedural in character.[88]
 
 
 42
 But due process in this area does not mean inexorably that a recipient has "such a right in benefit payments as would make every defeasance of 'accrued' interests" a violation.[89] "Nor," of course, "does an expectation interest in public benefits confer a contractual right to receive the expected amounts."[90] And while "[i]t may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity,"'[91] "the analogy drawn . . . between social welfare and 'property' . . . cannot be stretched to impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits."[92]
 
 
 43
 Counsel have not undertaken to identify any constitutional impediment to operation of amended Section 211(a) upon their claims for compensation, nor do we perceive any. Members of the bar who voluntarily serve indigent parties in meritorious litigation honor one of the noblest traditions of the legal profession, and for that they deserve the highest commendation. They also earn sympathetic consideration by the courts of requests for reasonable recompense in situations wherein the courts are empowered to entertain them. The fact remains, nonetheless, that no right to compensation from public monies for legal services rendered private litigants springs from the Constitution,[93] and that the service levies on the federal treasury only in the event and to the extent that a statute authorizes it.[94] It is largely because of these considerations that any endeavor to pin a constitutional violation on amended Section 211(a)'s destruction of the withheld compensation benefits as a fund from which counsel fees might have been paid in these cases is almost immediately doomed to failure.
 
 
 44
 We have no question of impairment of the obligations of a preexisting contract.[95] As to the Government there was none, and even if counsel had valid contractual arrangements with their clients for payment of fees, that conclusion would not be altered. Counsel, as we have said, have no claim to payment from federal monies, and no contract with their clients could confer such a right. And while a vested cause of action, whether emanating from contract or common law principles, may constitute property beyond the power of the legislature to take away,[96] that precept cannot benefit counsel here. Section 211(a) left unimpaired any litigable claim of counsel against their clients,[97] and in any event the federal treasury is not available as a source for satisfaction of the claim.
 
 
 45
 We conclude that the fact that adjudication of claims for noncontractual benefits is confided to the Administrator of Veterans' Affairs does not alone afford ground for constitutional complaint. Courts before which the constitutionality of predecessor provisions or counterparts of new Section 211(a) has been questioned have uniformly upheld those provisions.[98] The array of decisions doing so prominently includes several of our own,[99] and we are not disposed to discard them even if we were free to do so.[100]
 
 
 46
 The constitutional adjudications find common ground in the thesis, as expressed by the First Circuit, that "veterans' benefits are gratuities and establish no vested rights in the recipients so that they may be withdrawn by Congress at any time and under such conditions as Congress may impose."[101] That proposition had its origin in a line of Supreme Court decisions,[102] and despite possible indication that that thesis may be waning,[103] we are obliged to accept it unless and until it is disapproved. We think, too, that there is another predicate possessing at least an equal measure of vitality. The Supreme Court has declared that "the United States, when it creates rights in individuals against itself, is under no obligation to provide a remedy through the courts;"[104] "it may," instead, "provide an administrative remedy and make it exclusive. . . ."[105] That is precisely what Congress did in the current version of Section 211(a), and Congress was well within its legislative prerogatives when it did so.
 
 
 47
 In summary, we hold that amended Section 211(a), properly construed, outlaws pending as well as future judicial reviews of the Administrator's determinations on claims for noncontractual benefits; that the District Court's awards of fees to counsel, as non-final judgments, are intercepted by the amendment to the same extent that the underlying awards of benefits would have been; and that Congress was constitutionally free to legislate these consequences. Our consequent lack of jurisdiction renders both unnecessary and improper any consideration of other objections appellants advance against allowance of the fees.
 
 
 48
 The fee awards appealed from are vacated and the appeals are dismissed for lack of jurisdiction.
 
 
 49
 So ordered.
 
 
 
 [1]
 38 U.S.C. Secs. 321, 322 (1970)
 
 
 [2]
 38 U.S.C. Sec. 701 et seq. (1970)
 
 
 [3]
 The ground of discontinuance was nonrecognition of Mrs. de Rodulfa as still the insured's unremarried widow. 38 U.S.C. Sec. 802(d) (2) (A) (1952). See also de Sinlao v. United States, 106 U.S.App. D.C. 263, 271 F.2d 846 (1959)
 
 
 [4]
 Included was the claim that judicial review of the termination of wartime death compensation was barred by 38 U.S.C. Sec. 211(a) (1964), discussed infra Part II
 
 
 [5]
 See 38 U.S.C. Sec. 784(b) (1964). See also Timoni v. United States, 135 U.S. App.D.C. 407, 419 F.2d 294 (1969)
 
 
 [6]
 Judgment against the United States was denied on the ground that it had not consented to be sued eo nomine for such benefits
 
 
 [7]
 De Rodulfa v. United States, 295 F. Supp. 28 (D.D.C.1969)
 
 
 [8]
 See notes 12-13, infra. Appellee did not cross-appeal from the parts of the judgment adverse to her
 
 
 [9]
 As in the de Rodulfa case, 38 U.S.C. Sec. 211(a) was advanced as a barrier to judicial review of the administrative action. See Part II, infra
 
 
 [10]
 Since the insurance benefits had not been discontinued but were only being offset against the claimed compensation overpayment, restoration of the compensation award had the effect of automatically releasing withheld insurance benefits, so that a judgment for them was unnecessary
 
 
 [11]
 Supra note 7
 
 
 [12]
 In both cases, the appeals are only from the fee awards. See Part II, infra. Since no other parts of the judgments have been attacked here, appellees' wartime death compensation awards were reinstated. On the other hand, the portions of benefits attributable to counsel fees have been retained by the Administrator pending the outcome of the appeals
 
 
 [13]
 Appellees argued as a threshold matter that appellants lack an appealable interest. The emphatic answer appears from Freeman v. Ryan, 133 U.S.App.D.C. 1, 408 F.2d 1204 (1968). There we said:
 Where litigation involving federal programs comes to involve questions of attorney's fees the cognizant federal official has an interest in the fee award as well as the merits of the litigation even though, or assuming, the fee does not decrease funds in the Treasury.
 This has been indicated without discussion or debate in rulings of this court. We think it is one aspect of the interest of Government officials in the programs they administer, an interest that is not to be narrowly and technically confined so as to limit presentation to courts of issues they consider to have significance in terms of their overall responsibilities as public officials.
 Id. at 3, 408 F.2d at 1206. See also SEC v. United States Realty & Improvement Co., 310 U.S. 434, 458-460, 60 S.Ct. 1044, 84 L.Ed.1293 (1940); Nuesse v. Camp, 128 U.S.App.D.C. 172, 184, 385 F.2d 694, 706 (1967); United States v. Snyder, 85 U.S.App.D.C. 198, 203, 177 F.2d 44, 49 (1949).
 
 
 [14]
 "Except as provided in Sections 775, 784, and as to matters arising under chapter 37 of this title, the decisions of the Administrator on any question of law or fact concerning a claim for benefits or payments under any law administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision." 38 U.S.C. Sec. 211(a) (1964)
 This version was substantially identical to its immediate forerunner. Act of Oct. 17, 1940, 54 Stat. 1197. The exceptions, provided for in 38 U.S.C. Secs. 775, 784 and chapter 37 of that title relate to contract matters-insurance and loan guaranties. Other counterparts in prior law were the Act of June 7, 1924, ch. 320, tit. I, Sec. 9, 43 Stat. 610, and the Act of Mar. 20, 1933, ch. 3, tit. I, Sec. 7, 48 Stat. 9.
 
 
 [15]
 See note 14, supra
 
 
 [16]
 See De Sibonga v. Administrator of Veterans' Affairs, 147 U.S.App.D.C. 370, 458 F.2d 789 (1972); Slocumb v. Gray, 86 U.S.App.D.C. 5, 8, 179 F.2d 31, 34 (1949); Snauffer v. Stimson, 81 U.S. App.D.C. 110, 111, 155 F.2d 861, 862 (1946). See also the cases cited infra note 21. The same conclusion had been reached under a prior statute. Barnett v. Hines, 70 App.D.C. 217, 220, 105 F.2d 96, 99, cert. denied, 308 U.S. 573, 60 S. Ct. 88, 84 L.Ed. 480 (1939)
 
 
 [17]
 104 U.S.App.D.C. 6, 11-12, 259 F.2d 163, 168-169 (1958)
 
 
 [18]
 115 U.S.App.D.C. 201, 207, 317 F.2d 901, 907 (1962)
 
 
 [19]
 126 U.S.App.D.C. 415, 418-420, 379 F. 2d 469, 472-474 (1967)
 
 
 [20]
 De Sinlao v. United States, supra note 3; Hahn v. Gray, 92 U.S.App.D.C. 188, 203 F.2d 625 (1953); Van Horne v. Hines, 74 App.D.C. 214, 122 F.2d 207, cert. denied, 314 U.S. 689, 62 S.Ct. 360, 86 L.Ed. 55 (1941)
 
 
 [21]
 126 U.S.App.D.C. at 419, 379 F.2d at 473
 
 
 [22]
 See notes 4, 9, supra, and accompanying text
 
 
 [23]
 Act of Aug. 12, 1970, Pub.L. No. 91-376, Sec. 8(a), 84 Stat. 790, codified in 38 U.S.C. Sec. 211(a) (1970)
 
 
 [24]
 See text supra at note 6 and following note 10. As we have pointed out, each judgment was subject to a credit
 
 
 [25]
 See text supra at notes 7, 11-12
 
 
 [26]
 This has been clear from the very beginning. In their opening brief appellants announced, and ever since they have consistently recognized, that "[t]he Government appeals only from the fee allowances." Brief for Appellants at 3. See also note 12, supra, and text infra at notes 27-28
 
 
 [27]
 Supplemental Brief for Appellants at 3
 
 
 [28]
 Supplemental Brief for Appellants at 8
 
 
 [29]
 Appellants say in this connection:
 We are still studying what position the Government should take with regard to Mrs. de Rodulfa's and Mrs. del Rosario's own portions of the judgments (as distinguished from the claims of their counsel), based upon the recent legislation. However, since the instant appeals were limited to fee awards, we have decided that any attack on those remaining portions must be presented (if at all) to the district court in the first instance.
 Supplemental Brief for Appellants at 7.
 
 
 [30]
 Smallwood v. Gallardo, 275 U.S. 56, 62, 48 S.Ct. 23, 24, 72 L.Ed. 152 (1927)
 
 
 [31]
 Claridge Apartments Co. v. Commissioner of Internal Revenue, 323 U.S. 141, 164, 65 S.Ct. 172, 185, 89 L.Ed. 139 (1944)
 
 
 [32]
 Kalis v. Leahy, 88 U.S.App.D.C. 166, 167-168, 188 F.2d 633, 634-635, cert. denied, 341 U.S. 926, 71 S.Ct. 797, 95 L.Ed. 1358 (1951); Neild v. District of Columbia, 71 App.D.C. 306, 314, 110 F.2d 246, 254 (1940)
 
 
 [33]
 International Brotherhood of Boilermakers etc. Int'l v. NLRB, 114 U.S.App.D.C. 372, 374, 316 F.2d 373, 375 (1963), quoting United States Fidelity & Guar. Co. etc. v. United States ex rel. Struthers Wells Co., 209 U.S. 306, 314 (1908)
 
 
 [34]
 Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964), quoting Union Pac. R. R. v. Laramie Stockyards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 58 L.Ed. 179 (1913), in turn quoting United States v. Heth, 7 U.S. (3 Cranch) 399, 413, 2 L.Ed. 479 (1806). See also Vito v. Vito, 106 U.S.App.D.C. 326, 328, 272 F.2d 555, 557 (1959)
 
 
 [35]
 Kindleberger v. Lincoln Nat'l Bank, 81 U.S.App.D.C. 101, 106, 155 F.2d 281, 286 (1946), cert. denied, 329 U.S. 803, 67 S. Ct. 495, 91 L.Ed. 686 (1947). See also Stephens v. Cherokee Nation, 174 U.S. 445, 477-478, 19 S.Ct. 722, 43 L.Ed. 1041 (1899)
 
 
 [36]
 H.Rep.No.91-1166, 91st Cong., 1st Sess. 8 (1970) [hereinafter cited 1970 House Report]
 
 
 [37]
 1970 House Report, supra note 36, at 9
 
 
 [38]
 1970 House Report, supra note 36, at 9-10. See text supra at notes 17-21
 
 
 [39]
 The Administrator's report, dated June 9, 1970, was furnished in connection with another bill which would have dealt with the problem by redefining the word "claim" as used in the older section. See text supra at notes 17-18
 
 
 [40]
 1970 House Report, supra note 36, at 19-24
 
 
 [41]
 1970 House Report, supra note 36, at 21
 
 
 [42]
 1970 House Report, supra note 36, at 23-24. The Administrator added:
 Moreover, in the cases considered so far, the U. S. District Court has not been governed by the time limitations and conditions usually applicable under Federal statutes and rules governing suits against the United States or its officials when specific statutory authority has been granted for judicial review. One consequence of this is that judgments for retroactive benefits of over $18,000 for installments accruing from a period commencing as early as the 1940's have been rendered, and these judgments have also ordered the Administrator to deduct as much as 25 percent attorneys' fees from the benefits due and to become due. The scope of the Tracy decision and the decisions upon which it is based is so broad that it could well afford a basis for judicial review of millions of decisions terminating or reducing many types of benefits provided under laws administered by the Veterans' Administration. Such review might even extend to the decisions of predecessor agencies made many years ago. On the other hand, this judicially authorized form of review is inherently unfair since it does not permit review of any decisions denying an original claim for benefits.
 Officials of the Department of Justice have expressed grave concern regarding the scope and volume of litigation stemming from the Tracy decision. This, of course, is also a matter of great concern to the Veterans' Administration.
 1970 House Report, supra note 36, at 24.
 
 
 [43]
 1970 House Report, supra note 36, at 10
 
 
 [44]
 1970 House Report, supra note 36, at 10-11. Consistently therewith, Congressman Teague, the patron of the amendment, remarked on the floor of the House:
 The reason for the inclusion of section 8 in this bill is because a recent court decision gave preferential treatment to a limited group of beneficiaries. If we are going to have court review it must apply to all beneficiaries with equal force. This the court is unable to do under existing law and sought to do in piecemeal fashion and, in my opinion, erroneously.
 This provision in section 8 was supported unanimously in our committee. As far as I know, the same can be said for the committee in the other body.
 I am opposed to a windfall going to a particular class of beneficiaries or a particular group of lawyers who have interested themselves in the type of cases which are involved in this question and which are set forth in detail in the report on this bill which is House Report No. 91-1166 on H.R. 17958, the contents of which were substituted for S. 3348.
 
 
 [116]
 Cong.Rec. H. 7424 (July 30, 1970)
 
 
 [45]
 See text supra at note 23
 
 
 [46]
 Compare Ziffrin, Inc. v. United States, 318 U.S. 73, 78, 63 S.Ct. 465, 87 L.Ed. 621 (1943) (change of statutory law pending administrative decision); Duplex Printing Press Co. v. Deering, 254 U.S. 443, 464, 41 S.Ct. 172, 65 L.Ed. 349 (1921) (statutory change pendente lite). See also cases cited infra note 54
 
 
 [47]
 Ziffrin v. United States, supra note 46, 318 U.S. at 78, 63 S.Ct. at 469
 
 
 [48]
 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801)
 
 
 [49]
 Id. at 110, 2 L.Ed. 49
 
 
 [50]
 Thorpe v. Housing Authority, 393 U.S. 268, 281-283, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969) (change in administrative regulation); Hines v. Davidowitz, 312 U.S. 52, 60, 61 S.Ct. 399, 85 L.Ed. 581 (1941) (intervening statute); Carpenter v. Wabash Ry., 309 U.S. 23, 27, 60 S.Ct. 416, 84 L.Ed. 558 (1940) (intervening statute); American Steel Foundries v. Tri-City Cent. Trades Council, 257 U.S. 184, 201, 42 S.Ct. 72, 66 L.Ed. 189 (1921) (intervening statute); Dinsmore v. Southern Express Co., 183 U.S. 115, 119-121, 22 S.Ct. 45, 46 L.Ed. 111 (1901) (intervening statute); United States v. Preston, 28 U.S. (3 Pet.) 57, 66-67, 7 L. Ed. 601 (1830) (intervening statute); Fairfax's Devisee v. Hunter's Lessee, 11 U.S. (7 Cranch) 603, 625, 3 L.Ed. 453 (1813) (intervening treaty); Schaff v. R. W. Claxton, Inc., 79 U.S.App.D.C. 207, 208, 144 F.2d 532, 533 (1944) (intervening judicial decision); District of Columbia v. American Pharmaceutical Ass'n, 77 U.S.App.D.C. 94, 133 F.2d 43 (1942) (intervening statute); Van Horne v. Hines, supra note 20, 74 App.D.C. at 216, 122 F.2d at 209 (intervening statute). See also Dorchy v. Kansas, 264 U.S. 286, 289, 44 S.Ct. 323, 68 L.Ed. 686 (1924); Watts, Watts & Co. v. Unione Austriciaca Di Navigazione, 248 U.S. 9, 21, 39 S.Ct. 1, 63 L.Ed. 100 (1918); Ruppert v. Ruppert, 77 U.S.App. D.C. 65, 68, 134 F.2d 497, 500 (1942)
 
 
 [51]
 Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941) (intervening judicial decision); Sioux County, Neb. v. National Sur. Co., 276 U.S. 238, 240, 48 S.Ct. 239, 72 L.Ed. 547 (1928) (intervening judicial decision); Missouri ex rel. Wabash Ry. v. Public Serv. Comm'n, 273 U.S. 126, 130-131, 47 S.Ct. 311, 71 L.Ed. 575 (1927) (intervening statute); Texas Co. v. Brown, 258 U.S. 466, 474, 42 S.Ct. 375, 66 L.Ed. 721 (1922) (intervening statute); Metzger Motor Car Co. v. Parrott, 233 U.S. 36, 41-42, 34 S.Ct. 575, 58 L.Ed. 837 (1914) (intervening judicial decision); Gulf, C. & S. F. Ry. v. Dennis, 224 U.S. 503, 505-509, 32 S.Ct. 542, 56 L.Ed. 860 (1912) (intervening judicial decision); Moores v. National Bank, 104 U.S. 625, 629, 26 L.Ed. 870 (1882) (intervening judicial decision); Kibbe v. Ditto, 93 U.S. 674, 23 L.Ed. 1005 (1877) (intervening judicial decision). See also Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 309 U.S. 4, 7-8, 308 U.S. 530, 84 L.Ed. 447, 537 (1940); Patterson v. Alabama, 294 U.S. 600, 607, 55 S.Ct. 575, 79 L.Ed. 1082 (1935)
 
 
 [52]
 See text supra at notes 17-21
 
 
 [53]
 See Part III, supra
 
 
 [54]
 "[A] repealing statute which contains no saving clause operates as well upon pending cases as upon those thereafter commenced." Gwin v. United States, 184 U.S. 669, 675, 22 S.Ct. 526, 529, 46 L.Ed. 741 (1902). Numerous cases are in accord. See United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763 (1934) (repeal of Eighteenth Amendment, liquidating pending prosecutions for violation of National Prohibition Act); The Assessors v. Osborne (Gates v. Osborne), 76 U.S. (9 Wall.) 567, 19 L.Ed. 748 (1870) (repeal of statute conferring jurisdiction); Hornthall v. Collector, 76 U.S. (9 Wall.) 560, 19 L.Ed. 560 (1870) (same); Norris v. Crocker, 54 U.S. (13 How.) 429, 440, 14 L.Ed. 210 (1852) (same); United States v. Ship Helen, 10 U.S. (6 Cranch) 203, 3 L.Ed. 199 (1810) (same). See also Gurnee v. Patrick County, 137 U.S. 141, 11 S.Ct. 34, 34 L. Ed. 601 (1890); Wilkinson v. Nebraska, 123 U.S. 286, 8 S.Ct. 120, 31 L.Ed. 152 (1887); The Lucy, 75 U.S. (8 Wall.) 307, 19 L.Ed. 394 (1869); McNulty v. Batty, 51 U.S. (10 How.) 72, 13 L.Ed. 333 (1850)
 
 
 [55]
 See text supra at notes 29-30 and Part III, supra
 
 
 [56]
 Bruner v. United States, 343 U.S. 112, 116-117, 72 S.Ct. 581, 584, 96 L.Ed. 786 (1952). See also Part V, infra. This rule has seen frequent application in cases wherein a statute negating jurisdiction became effective pending appeal. Smallwood v. Gallardo, supra note 30, 275 U.S. at 60-62, 48 S.Ct. 23, 72 L.Ed. 152; Western Union Tel. Co. v. Louisville & N. R. R. Co., 258 U.S. 13, 18, 22, 42 S. Ct. 258, 66 L.Ed. 437 (1922); Crozier v. Fried Krupp, etc., 224 U.S. 290, 302-309, 32 S.Ct. 488, 56 L.Ed. 771 (1911); Sherman v. Grinnell, 123 U.S. 679, 8 S.Ct. 260, 31 L.Ed. 278 (1887); Railroad Co. v. Grant, 98 U.S. 398, 25 L.Ed. 231 (1879); United States v. Tynen, 78 U.S. (11 Wall.) 88, 95, 20 L.Ed. 153 (1871); Ex parte McCardle, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1869); Insurance Co. v. Ritchie, 72 U.S. (5 Wall.) 541, 18 L. Ed. 540 (1867); United States v. Preston, 28 U.S. (3 Pet.) 57, 66, 7 L.Ed. 601 (1830). See also Schooner Rachel v. United States, 10 U.S. (6 Cranch) 329, 3 L. Ed. 239 (1810) (expiration of law conferring jurisdiction); Yeaton v. United States, 9 U.S. (5 Cranch) 281, 3 L.Ed. 101 (1809) (same)
 
 
 [57]
 Supra note 20
 
 
 [58]
 See note 14, supra, and accompanying text
 
 
 [59]
 74 App.D.C. at 215-216, 122 F.2d at 208-209
 
 
 [60]
 Id. at 216, 122 F.2d at 209
 
 
 [61]
 See Hodges v. Snyder, 261 U.S. 600, 603-604, 43 S.Ct. 435, 67 L.Ed. 819 (1923); McCullough v. Virginia, 172 U. S. 102, 123-124, 19 S.Ct. 134, 43 L.Ed. 382 (1898); Gray v. Chicago, I. & N. R. R. (The Clinton Bridge), 77 U.S. (10 Wall.) 454, 463, 19 L.Ed. 969 (1870); Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421, 431, 436, 15 L.Ed. 435 (1856). See also Thorpe v. Housing Authority, supra note 50, 393 U.S. at 282 n. 43, 89 S.Ct. 518, 21 L.Ed.2d 474; Greene v. United States, supra note 34, 376 U.S. at 160-161, 84 S.Ct. 615, 11 L.Ed.2d 576; Pope v. United States, 323 U.S. 1, 7-9, 65 S.Ct. 16, 89 L.Ed. 3 (1944); Western Union Tel. Co. v. Louisville & N. R. R., supra note 56, 258 U.S. at 19-20, 42 S.Ct. 258, 66 L.Ed. 437; Massingill v. Downs, 48 U.S. (7 How.) 760, 768, 12 L.Ed. 903 (1849). Cf. Chase Securities Corp. v. Donaldson, 325 U.S. 304, 310-311, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945); James v. Appel, 192 U.S. 129, 136-137, 24 S.Ct. 222, 48 L.Ed. 377 (1904)
 The rule stated in text is subject to an exception in the case of a "public right," which even after its establishment by a judgment may be altered by subsequent legislation. Hodges v. Snyder, supra, 261 U.S. at 603-604, 43 S.Ct. 435, 67 L.Ed. 819 (injunction against maintenance of illegal school district and issuance of its bonds); Western Union Tel. Co. v. Louisville & N. R. R., supra note 56, 258 U.S. at 19-20, 42 S.Ct. 258, 66 L.Ed. 437 (exertion of power of eminent domain in the public interest); Rafferty v. Smith, Bell & Co., 257 U.S. 226, 232, 42 S.Ct. 71, 66 L.Ed. 208 (1921) (restitution of taxes allegedly illegally collected); Pennsylvania v. Wheeling & Belmont Bridge Co., supra, 59 U.S. (18 How.) at 431-436, 15 L.Ed. 435 (abatement of obstruction to navigation of river). See also Gray v. Chicago, I. & N. R. R. (The Clinton Bridge), supra, 77 U.S. (10 Wall.) at 462-463, 19 L.Ed. 969. In the view we take of the instant cases, it is unnecessary to consider whether the District Court's judgments would in any event be subject to this exception.
 
 
 [62]
 McCullough v. Virginia, supra note 61, 172 U.S. at 123, 19 S.Ct. at 142, 43 L.Ed. 382
 
 
 [63]
 Id. at 123-124, 19 S.Ct. at 142
 
 
 [64]
 See text infra at notes 93-97
 
 
 [65]
 Gulf Ref. Co. v. United States, 269 U.S. 125, 137, 46 S.Ct. 52, 54, 70 L.Ed. 195 (1925)
 
 
 [66]
 Mackenzie v. A. Engelhard & Sons Co., 266 U.S. 131, 142, 45 S.Ct. 68, 69, 69 L.Ed. 205 (1924)
 
 
 [67]
 Gulf Ref. Co. v. United States, supra note 65, 269 U.S. at 137, 46 S.Ct. at 54
 
 
 [68]
 Mackenzie v. A. Engelhard & Sons Co., supra note 66, 266 U.S. at 142-143, 45 S.Ct. at 69
 
 
 [69]
 Gulf, C. & S. F. Ry. v. Dennis, supra note 51, 224 U.S. at 505, 32 S.Ct. 542, 56 L.Ed. 860
 
 
 [70]
 See Smallwood v. Gallardo, supra note 30, 275 U.S. at 61, 48 S.Ct. 23, 72 L.Ed. 152; Western Union Tel. Co. v. Louisville & N. R. R., supra note 56, 258 U.S. at 18, 22, 42 S.Ct. 258, 66 L.Ed. 437; Rafferty v. Smith, Bell & Co., supra note 61, 257 U.S. at 232, 42 S.Ct. 71, 66 L.Ed. 208; American Steel Foundries v. Tri-City Cent. Trades Council, supra note 50, 257 U.S. at 201, 42 S.Ct. 72, 66 L.Ed. 189; Freeborn v. Smith, 69 U.S. (2 Wall.) 160, 174-175, 17 L.Ed. 922 (1865). See also Gwin v. United States, supra note 54, 184 U.S. at 674, 25 L.Ed. 231; Railroad Co. v. Grant, supra note 56, 98 U.S. at 401-402, 22 S.Ct. 526, 46 L.Ed. 741
 
 
 [71]
 1 U.S.C. Sec. 109 (1970), quoted infra note 72
 
 
 [72]
 "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." 1 U.S.C. Sec. 109 (1970). This provision has endured in substantially the same form for more than a century. See Act of Feb. 25, 1871, ch. 71, Sec. 4, 16 Stat. 432
 
 
 [73]
 And, of course, to surviving dependents of deceased veterans
 
 
 [74]
 We do not suggest that for this reason alone a court could not make award of reasonable counsel fees if it had jurisdiction to act in the premises. We simply do not pass on the question
 
 
 [75]
 Supra note 56
 
 
 [76]
 343 U.S. at 117, 72 S.Ct. at 584
 
 
 [77]
 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916)
 
 
 [78]
 Id. at 508, 36 S.Ct. at 203
 
 
 [79]
 Id
 
 
 [80]
 344 U.S. 386, 73 S.Ct. 381, 97 L.Ed. 422 (1953)
 
 
 [81]
 Id. at 390, 73 S.Ct. at 384. The Court added:
 But where the object of Congress was to destroy rights in the future while saving those which have accrued, to strike down enforcing provisions that have special relation to the accrued right and as such are part and parcel of it, is to mutilate that right and hence to defeat rather than further the legislative purpose. The Government acknowledges that there were special considerations, apart from the matter of interest, for giving the insured under the War Risk Insurance Act access to the district courts rather than relegating him to the Court of Claims. In repealing the War Risk Insurance Act among numerous other statutes, Congress was concerned not with jurisdiction, not with the undesirability of the district courts and the suitability of the Court of Claims as a forum for suits under that Act. It was concerned with terminating war powers after the "shooting war" had terminated.
 Id. at 390-391, 73 S.Ct. at 384.
 
 
 [82]
 See text supra at notes 17-21
 
 
 [83]
 See Part II, supra
 
 
 [84]
 See Part III, supra
 
 
 [85]
 Richardson v. Belcher, 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971). See also Goldberg v. Kelly, 397 U.S. 254, 261-263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)
 
 
 [86]
 Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)
 
 
 [87]
 Id. See also Richardson v. Belcher, supra note 85, 404 U.S. at 81, 92 S.Ct. at 257
 
 
 [88]
 Goldberg v. Kelly, supra note 85, 397 U.S. at 261-265, 90 S.Ct. 1011, 25 L.Ed. 2d 287
 
 
 [89]
 Richardson v. Belcher, supra note 85, 404 U.S. at 80, 92 S.Ct. at 256. See also Flemming v. Nestor, supra note 86, 363 U.S. at 611, 80 S.Ct. 1367
 
 
 [90]
 Richardson v. Belcher, supra note 85, 404 U.S. at 80, 92 S.Ct. at 257
 
 
 [91]
 Goldberg v. Kelly, supra note 85, 397 U.S. at 262 n. 8, 90 S.Ct. at 1017
 
 
 [92]
 Richardson v. Belcher, supra note 85, 404 U.S. at 81, 92 S.Ct. at 257
 
 
 [93]
 United States v. Dillon, 346 F.2d 633 (9th Cir. 1965), cert. denied, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966); Jackson v. State, 413 P.2d 488, 490 (Sup. Ct.Alaska 1966); State v. Clifton, 247 La. 495, 172 So.2d 657, 667 (1965); State v. Davis, 270 N.C. 1, 153 S.E.2d 749, 757, cert. denied, Nivens v. North Carolina, 389 U.S. 828, 88 S.Ct. 87, 19 L.Ed.2d 84 (1967); Scott v. State, 216 Tenn. 375, 392 S.W.2d 681, 685-687 (1965); Presby v. Klickitat County, 5 Wash. 329, 31 P. 876, 877 (1892)
 
 
 [94]
 Miller v. Pleasure, 296 F.2d 283, 284 (2d Cir. 1961), cert. denied, 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962); Dolan v. United States, 351 F.2d 671 (5th Cir. 1965); United States v. Dillon, supra note 93. See also United States v. Thompson, 356 F.2d 216, 227 n. 12 (2d Cir.), cert. denied, 384 U.S. 964, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1965). See also the numerous cases collected in Annot., 21 A.L.R.3d 819, 822-29 (1968)
 
 
 [95]
 See McGee v. International Life Ins. Co., 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); W. B. Worthen Co. v. Thomas, 292 U.S. 426, 431-432, 54 S. Ct. 816, 78 L.Ed. 1344 (1934); Freeland v. Williams, 131 U.S. 405, 413-420, 9 S.Ct. 763, 33 L.Ed. 193 (1889)
 
 
 [96]
 Graham v. Goodcell, 282 U.S. 409, 426, 51 S.Ct. 186, 75 L.Ed. 415 (1931) (cause of action for an amount due); Forbes Pioneer Boat Line v. Everglades Drainage Dist., 258 U.S. 338, 339, 42 S.Ct. 325, 66 L.Ed. 647 (1922) (cause of action for tolls unlawfully collected); Angle v. Chicago, St. M. & O. Ry., 151 U.S. 1, 25-26, 14 S.Ct. 240, 38 L.Ed. 55 (1894) (cause of action for damages). See also Gibbes v. Zimmerman, 290 U.S. 326, 332, 54 S. Ct. 140, 78 L.Ed. 342 (1933)
 
 
 [97]
 We intimate no view as to the situation of counsel and their clients inter se
 
 
 [98]
 Milliken v. Gleason, 332 F.2d 122, 123 (1st Cir. 1964), cert. denied, 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965); Smith v. United States, 83 F.2d 631, 639 (8th Cir. 1936); United States v. Robinson, 103 F.2d 713, 715 (9th Cir. 1939); United States v. Daubendiek, 25 F.R.D. 50, 54 (N.D.Iowa 1959); Steinmasel v. United States, 202 F.Supp. 335, 337 (D.S.D.1962). See also the cases cited infra note 99. See also Strong v. United States, 155 F.Supp. 468 (D.Mass. 1957), appeal dismissed, 356 U.S. 226, 78 S.Ct. 709, 2 L.Ed.2d 712 (1958)
 
 
 [99]
 Hahn v. Gray, supra note 20, 92 U.S. App.D.C. at 190, 203 F.2d at 626; Slocumb v. Gray, supra note 16, 86 U.S.App. D.C. at 8, 179 F.2d at 34; Van Horne v. Hines, supra note 20, 74 App.D.C. at 216, 122 F.2d at 209; Barnett v. Hines, supra note 16, 70 App.D.C. at 220, 105 F.2d at 99
 
 
 [100]
 See, e. g., Insurance Agents' Int'l v. NLRB, 104 U.S.App.D.C. 218, 260 F.2d 736 (1958), aff'd, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960); Davis v. Peerless Ins. Co., 103 U.S.App.D.C. 125, 127, 255 F.2d 534, 536 (1958)
 
 
 [101]
 Milliken v. Gleason, supra note 98, 332 F.2d at 123. See also Hahn v. Gray, supra note 20, 92 U.S.App.D.C. at 190, 203 F.2d at 626; Slocumb v. Gray, supra note 16, 86 U.S.App.D.C. at 8, 179 F.2d at 34; Van Horne v. Hines, supra note 20, 74 App.D.C. at 216, 122 F.2d at 209; Barnett v. Hines, supra note 16, 70 App. D.C. at 220, 105 F.2d at 99; Smith v. United States, supra note 98, 83 F.2d at 639; United States v. Robinson, supra note 98, 103 F.2d at 715; United States v. Daudendiek, supra note 98, 25 F.R.D. at 54; Steinmasel v. United States, supra note 98, 202 F.Supp. at 337
 
 
 [102]
 The leader in this decisional line is Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), where the Court distinguished between pensiontype benefits and rights under War Risk Insurance:
 War Risk Insurance, while resembling in benevolent purpose pensions, compensation allowances, hospital and other privileges accorded to former members of the Army and Navy or their dependents, differs from them fundamentally in legal incidents. Pensions, compensation allowances, and privileges are gratuities. They involve no agreement of parties; and the grant of them creates no vested right. The benefits conferred by gratuities may be redistributed or withdrawn at any time in the discretion of Congress. . . . On the other hand, war risk policies, being contracts, are property and create vested rights. The terms of these contracts are to be found in part in the policy, in part in the statutes under which they are issued and the regulations promulgated thereunder.
 Id. at 576-577, 54 S.Ct. at 842 (citations omitted). The characterization of pension-type benefits as gratuities drew upon earlier decisions to the same effect. United States v. Cook, 257 U.S. 523, 527, 42 S.Ct. 200, 66 L.Ed. 350 (1922); Frisbie v. United States, 157 U.S. 160, 166, 15 S.Ct. 586, 39 L.Ed. 657 (1895); United States v. Teller, 107 U.S. 64, 68, 2 S.Ct. 39, 27 L.Ed. 352 (1882).
 
 
 [103]
 See Goldberg v. Kelly, supra note 85, 397 U.S. at 261-264, 90 S.Ct. 1011, 30 L. Ed.2d 231
 
 
 [104]
 United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 465, 63 L.Ed. 1011 (1919) (servicemen's claims for property damage occasioned in military service). See also Dismuke v. United States, 297 U.S. 167, 171-172, 56 S.Ct. 400, 80 L.Ed. 561 (1936) (claim under Civil Service Retirement Act); Butte, A. & P. Ry. v. United States, 290 U.S. 127, 142-143, 54 S.Ct. 108, 78 L.Ed. 222 (1933) (claim for reimbursement); Work v. United States ex rel. Rives, 267 U.S. 175, 181-182, 45 S.Ct. 252, 69 L.Ed. 561 (1925) (claim for reimbursement); Milliken v. Gleason, supra note 98, 332 F.2d at 123 (claim for veterans' benefits). And see Stark v. Wickard, 321 U.S. 288, 306, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Tutun v. United States, 270 U.S. 568, 576-577, 46 S.Ct. 425, 70 L.Ed. 738 (1926); Reaves v. Ainsworth, 219 U.S. 296, 306, 31 S.Ct. 230, 55 L.Ed. 225 (1911)
 
 
 [105]
 Dismuke v. United States, supra note 104, 297 U.S. at 172, 56 S.Ct. at 403. See also Tutun v. United States, supra note 104, 270 U.S. at 576, 46 S.Ct. 425, 70 L.Ed. 738; Milliken v. Gleason, supra note 98, 332 F.2d at 123